## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOAN E. FARR, individually *pro se*, and in the )
interests of American citizens, )
                                    )
         Plaintiff, )
                                    )
         v. )      Case No. 2:22-cv-2476-DDC-GEB
                                    )
UNITED STATES GOVERNMENT; )
DEPARTMENT OF DEFENSE; DEPARTMENT )
OF JUSTICE; U.S. SENATOR JAMES INHOFE )
LUKE HOLLAND; U.S. SENATOR JERRY )
MORAN; STATE OF KANSAS; KANSAS )
SECRETARY OF STATE SCOTT SCHWAB; )
FEDERAL BUREAU OF INVESTIGATION; )
CENTRAL INTELLIGENCE AGENCY; )
INTERNAL REVENUE SERVICE; ASSISTANT )
U.S. ATTORNEY CHRISTOPHER ALLMAN; )
SEDGWICK COUNTY DISTRICT COURT; and )
other known/unknown state and government actors. )
                                    )
         Defendants. )
_____ )

## DEFENDANT SCOTT SCHWAB'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

       Kansas Secretary of State Scott Schwab (the "Secretary") submits this Memorandum in

Support of his Motion to Dismiss Plaintiff's Complaint for (i) lack of subject-matter jurisdiction

and (ii) failure to state a claim upon which relief can be granted.

### I. – Introduction

       If the Court is experiencing a sense of déjà vu after reading Plaintiff's Complaint, that is

no mistake. This is at least the third federal lawsuit in which this pro se litigant has raised virtually

identical claims grounded in bizarre theories about vast governmental conspiracies to impair her

candidacy for U.S. Senate, break up her personal relationship with her boyfriend, subject her to

financial loss, improperly surveil and harass her, and ultimately kill her and others. *See Farr v. U.S. Gov't et al.*, No. 2-21-cv-2183-JWB-TJJ (D. Kan.); *Farr v. Curry et al.*, No. 2:22-cv-2120-DDC-KGG (D. Kan.).  In this latest iteration, Plaintiff has also added the Secretary to the mix, alleging that he was involved in "rigging" the 2022 Primary Election that she lost to Senator Jerry Moran.  While the Complaint here reads more like a script submission for a reality television show (or perhaps simply a cry for help), the Court need not delve too deeply into this scene because it lacks jurisdiction over most (if not all) of Plaintiff's claims against the Secretary by virtue of the Eleventh Amendment.

Unfortunately, Plaintiff nowhere specifies whether she is asserting her claims against the Secretary in his official or individual capacity.  She requests both money damages and injunctive relief, raising further ambiguity as to the exact nature of her claims.  Ultimately, however, neither path can lead to any recovery.  To the extent she raises official capacity claims, the Secretary has sovereign immunity.  And to the extent she is advancing individual capacity claims, her Complaint falls far short of stating a claim upon which relief can be granted.

## II.  Legal Standard

### A.      *Rule 12(b)(1): Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Because federal courts are courts of limited jurisdiction, they are imbued only with such power as is authorized by the Constitution or statute.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A presumption thus exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.*

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  *City of*

*Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted).  When a motion challenges the facial sufficiency of a complaint's allegations, as is the case here, the court must accept all allegations in the Complaint as true.  *Frank v. Kan. Dep't of Agriculture*, No. 19-1054, 2019 WL 2393008, at *3 (D. Kan. June 6, 2019).  At the same time, although pro se litigants' pleadings are generally held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court "should not supply additional factual allegations to round out a pro se plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

### B.      *Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim*

To adequately state a viable cause of action, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face" and, in so doing, "nudge [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006). The Complaint must contain "more than labels and conclusions," *id.* at 550, and cannot rely merely on "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008).  A claim has "facial plausibility" only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Rule 12(b)(6), this Court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Com'rs of Cnty. of Arapahoe.*, 633 F. 3d 1022, 1025 (10th Cir. 2011).  But this general rule is inapplicable where a plaintiff's allegations are nothing more than legal conclusions or conclusory allegations. "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement." *Frey v. Town of Jackson*, 41 F.4th 1223, 1233 (10th Cir. 2022) (citation omitted).  "Conclusory allegations are not entitled to the assumption of truth." *Id.*  Because

Plaintiff is alleging conduct "against multiple individual governmental actors, it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *Bledsoe v. Carreno*, 53 F. 4th 589, 607 (10th Cir. 2022) (citations omitted).

## III. – Argument

### A.    *Plaintiff's Official Capacity Claims are Foreclosed by the Eleventh Amendment*

"The Eleventh Amendment renders a state 'immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'" *Higganbotham v. Okla. ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 644 (10th Cir. 2003) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "'[S]tates may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019).  This state sovereign immunity also precludes suits against state officials in their official capacities.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

The Supreme Court recognized a narrow exception to this principle in *Ex parte Young*, 209 U.S. 123, 164–65 (1908), which authorizes "suits for *prospective . . . relief* against state officials acting in violation of *federal* law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (emphasis added).  *Ex Parte Young* does not apply, however, to claims for money damages against state officials acting in their official capacities.  *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004) (citations omitted).  Nor does it extend to claims seeking injunctive relief based on *past actions*, *see Papasan v. Allain*, 478 U.S. 265, 277-78 (1986) (*Ex Parte Young* is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in

which federal law has been violated at one time or over a period of time in the past."), or to any claims grounded in *state law*. *See Pennhurst State Sch. & Hosp v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.").

Each of Plaintiff's causes of action requests monetary damages from Secretary Schwab (along with the other defendants). *See* Compl. ¶¶ 152, 159, 165, 172, 185, 191, 202.  If Plaintiff is suing the Secretary in his official capacity, all of those claims are foreclosed by the sovereign immunity that the Secretary enjoys under the Eleventh Amendment.  *Ex Parte Young*, meanwhile, offers no bypass for Plaintiff because she pursues only retrospective – not prospective – relief in connection with her allegations against the Secretary.  *See* Compl. ¶¶ 125-138 (specific allegations against the Secretary); *id.* at pages 21-31 (seeking relief for alleged "rigging" of past elections).

Plaintiff likewise finds no refuge in the "WHEREAS" clauses of her eight causes of action, all of which ask the Court to enjoin the "defendants from continuing [to violate] plaintiff's right to equal protection."  It is well settled that "a plaintiff cannot sustain a claim for prospective injunctive relief that is based on speculative future harm."  *Collins*, 916 F.3d at 1314 (citation omitted).  In other words, a plaintiff cannot seek an injunction that simply directs the defendant to follow the law because there would be no "case or controversy" (and thus no standing) in such circumstances.  The plaintiff would have to show that the defendant *always* engages in the conduct that she endeavors to proscribe and that she herself will necessarily be harmed by such conduct in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).  But Plaintiff here does not allege any facts suggesting that the Secretary is *currently* violating her federal equal protection rights.  The allegations against the Secretary all involve the alleged vote-swapping that occurred over four months ago during the 2022 Primary election.  Given that the Court must "assume that

[the Secretary] will conduct [his] activities within the law," *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974), Plaintiff's Complaint comes nowhere close to alleging the type of conduct against the Secretary that would justify *Ex Parte Young* relief.

### B.      If Present, Plaintiff's Individual Capacity Causes of Action Fail to State a Claim

As noted, Plaintiff's pro se Complaint is far from a model of clarity as to the nature of her claims against the Secretary.  It is not at all evident whether she is asserting claims against the Secretary in his individual capacity.  In such circumstances, most circuits – including the Tenth – eschew any hard line assumptions and instead look to the allegations in the Complaint and the type of relief sought to determine whether the plaintiff has raised official or individual capacity claims. *See Biggs v. Meadows*, 66 F.3d 56, 59-61 (4th Cir. 1995) (collecting cases).  For purposes of this case, the Secretary will assume that Plaintiff advances both official and individual capacity claims. In this case, the distinction is not outcome determinative.  While the Eleventh Amendment may not apply to any individual capacity causes of action, Plaintiff is unable to state a claim upon which relief can be granted as to any such claim against the Secretary.

#### 1.   *Count 1*

In Count 1, Plaintiff alleges that the "government defendants" – which, as reflected in Compl. ¶ 15, includes the Secretary – violated her First Amendment freedom of speech rights by surveilling her under the "FBI National Security Watchlist" in retaliation for comments she made to Oklahoma Senator James Inhofe.  Compl. ¶ 148.  Even assuming this to be true, Plaintiff's claim fails as to the Secretary.  Plaintiff has not alleged that the Secretary himself either placed her on a Watchlist or surveilled her, conduct that he would not even be in a position to undertake in his role as Secretary of State.  The allegations appear to be targeted solely at the other defendants.  *See*

*Bledsoe*, 53 F. 4th at 607 (when alleging conduct "against multiple individual governmental actors," complaint must "make clear exactly who is alleged to have done what to whom").

Plaintiff provides a laundry list of additional actions that "the above named defendants" allegedly engaged in, but the only one remotely relevant to the Secretary involves the purported "rig[ging]" of the 2022 Primary Election. Compl. ¶ 149. The Complaint, however, is devoid of any factual allegations that would plausibly suggest the Secretary "rigged" her election. Plaintiff merely asserts that the Secretary is "aware of the internal operations of how . . . voting machines tally votes," "know[s] how to rig elections[,]" and supposedly "rigged" the election using an "algorithm" to suppress votes. Compl. ¶¶ 125-126. None of these allegations advance her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff's only basis for believing that her election was rigged was that she did not get as many votes as she believed she should have, that a "gay . . . Democrat" won more counties than she did, and that two other people agree with her that her election and another election were rigged. Compl. ¶¶ 127-132. She also, in wholly conclusory fashion, avers that "fraud" occurred in a different race and that she has evidence of "flipping" votes in past elections. *Id.* at ¶¶ 133-134. But none of this would support her claim in connection with the 2022 Primary Election.

Furthermore, Plaintiff's allegations regarding the "rigging" of the election are implausible. She implies that the Secretary rigged her election using an algorithm and his purported knowledge of how "voting machines tally votes." Compl. at ¶¶ 125-126. This contention ignores a basic fact about Kansas elections: the responsibility for administering elections; purchasing, testing, and maintaining voting machines; conducting post-election audits and recounts; and tallying results rests with *county* – not *state* – election officials. *See* K.S.A. 25-3107(b) (post-election audit), K.S.A. 25-4407 (acquisition of voting machines); K.S.A. 25-4408 (storage and maintenance of

voting machines); K.S.A. 25-4411(b) (testing of voting machines).  There is thus no plausible basis to suggest that *the Secretary* could have used an algorithm to suppress any votes for her.  In sum, Count 1 rests on "naked assertions" that are not entitled to an "assumption of truth."  *Frey*, 41 F.4th at 1233.   As such, Count 1 must be dismissed for failure to state a claim.

       2.   *Count 2*

In Count 2, Plaintiff claims that the same conduct alleged in Count 1 also contravened her Fourth Amendment right to privacy.  The Fourth Amendment right to privacy depends on whether the person claiming the protection of the right has a legitimate, reasonable expectation of privacy. *United States v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009).  But "a plaintiff alleging a Fourth Amendment violation is not entitled to relief merely upon identifying an abstract right to privacy protected by the Fourth Amendment."  *Pyle v. Woods*, 874 F.3d 1257, 1236-64 (10th Cir. 2011). She "must also show that the defendant's *actions* violated the right at issue."  *Id.*

As with Count 1, Count 2 lacks any allegations that the *Secretary* surveilled her or engaged in any of the retaliatory conduct of which Plaintiff complains (save the purported election rigging). Compl. ¶¶ 154-55.  As for the alleged election rigging, there is no conceivable Fourth Amendment violation against the Secretary.  First, for the same reasons articulated in Count 1, it is implausible that *the Secretary* could have rigged Plaintiff's primary election.  Second, rigging an election is not a violation of the *right to privacy* in any event.  Plaintiff was running for public office.  She has no reasonable expectation of privacy in the outcome of an election.

       3.   *Count 3*

In Count 3, Plaintiff claims her Fourteenth Amendment Due Process and Equal Protection rights were violated.  Once again, she has failed to state a claim against the Secretary.  She alleges *no* actions whatsoever that the Secretary took that could have contravened her rights under either

constitutional provision.  She does not even reference her election rigging theories in Count 3. The only allegations Plaintiff includes in Count 3 involve actions such as surveillance, blocking emails, breaking up her relationship, and filing false charges against her.  Compl. ¶¶ 161-162. None of these alleged acts involved the Secretary, and the Complaint suggests nothing to the contrary.  Accordingly, Count 3 must be dismissed.

### 4.  *Count 4*

In Count 4, Plaintiff alleges violations of the Foreign Intelligence Surveillance Act of 1978 ("FISA") and the Patriot Act.  Although Plaintiff includes a passing reference to the "government defendants and state actors" having engaged in a covert operation to "rig her election," Compl. ¶ 168, she offers no allegation as to how such conduct would constitute a violation of FISA or the Patriot Act.  Regardless, her FISA and Patriot Act claims against the Secretary must be dismissed.

First, "there is no private right of action under the Patriot Act."  *Farr v. U.S. Gov't*, No. 21-2183-JWB, 2022 WL 124032, at *3 (D. Kan. Jan. 13, 2022) (citations omitted).  Second, with respect to the FISA claim, any cause of action for a FISA violation is limited to an action against the United States and must proceed under the Federal Tort Claims Act.  *Id.* (citing 18 U.S.C. § 2712).  The Secretary, of course, is a State – not federal – official and thus not subject to liability under this federal statute.

### 5.  *Count 5*

In Count 5, Plaintiff attempts to plead a "civil conspiracy and/or collusion" claim.  Plaintiff again recites the same theories of injuries that she cited in Counts 1-4.  Judge Broomes recently dismissed the virtually identical civil conspiracy theory in a lawsuit Plaintiff filed against many of the same Defendants in this suit.  *See Farr*, 2022 WL 124032, at *1, 3-4.  He concluded, *inter alia*,

that the claim was so "implausible, irrational, and wholly incredible" that it could not survive a motion to dismiss. *Id.* at *4 and n.6.

As for the new election rigging allegations directed in part at the Secretary, Compl. ¶ 174, not only are they wholly implausible for the reasons set forth above, but the statutes that Plaintiff cites are not even implicated. Plaintiff is attempting to plead a civil conspiracy under 42 U.S.C. § 1985(2), (3).[1] *See* Compl. ¶ 176. Section 1985(2) prohibits various actions related to witness intimidation. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994). The statute requires showing that a person was "a potential or viable witness in a state or federal proceeding." *Pabon v. New York City Transit Auth.*, 703 F. Supp.2d 188, 201 (E.D.N.Y. 2010). There are no such allegations in Plaintiff's Complaint.

Meanwhile, 42 U.S.C. § 1985(3) addresses conspiracies to deprive individuals of equal protection or constitutionally safeguarded privileges and immunities. But that statute is targeted at "conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citation omitted). There is no allegation in the Complaint that Plaintiff is part of any protected class (or *any* class for that matter). Nor is there any suggestion that the alleged discrimination she experienced was based on her membership in a particular class. *Cf. Gilmore v. Easter*, No. 22-3181, 2022 WL 4289549, *1 (D. Kan. Sept. 16, 2022) (granting motion to dismiss where the amended complaint failed to

---

[1] Plaintiff also references two criminal statutes – 18 U.S.C. § 242 and 18 U.S.C. § 2441 – but there is no private right of action under these statutes. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (private citizens cannot compel enforcement of criminal law); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) ("criminal statutes that do not provide for a private right of action . . . are . . . not enforceable through a civil action"). Plaintiff no doubt knows this well because she tried to bring similar claims in a property dispute years ago, and the Court rejected her effort to enforce criminal laws via a civil lawsuit. *See Farr v. Davis*, No. 16-2180, 2017 WL 1155716, at *2 (D. Kan. Feb. 22, 2017).

"show[] discriminatory animus against [the plaintiff] based on his membership in a protected class").

Moreover, to plead a valid conspiracy, a plaintiff must include "enough factual allegations to suggest that an agreement was made." *Gilmore*, 2022 WL 4289549, at *1 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010)). "A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level." *Id.* Here, Plaintiff's Complaint never pleads a "meeting of the minds" between the Secretary and any other party. It simply makes a naked assertion that Sen. Moran "conspired with Kansas Secretary of State Schwab to ensure that an algorithm was used to suppress plaintiff's votes." Compl. ¶ 126. This is not sufficient and thus necessitates dismissal of the claim.

### 6. *Count 6*

In Count 6, Plaintiff alleges "Fraud/Intentional Fraud/Fraud on the Court." It is not clear what Plaintiff's jurisdictional hook is for this state law cause of action. Presumably, she is seeking to invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). The Tenth Circuit generally advises district courts to dismiss such state law claims pursuant to 28 U.S.C. § 1367(c)(3) if the remaining federal claims have all been dismissed. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). If the Court opts to exercise such jurisdiction, however, the claim must be dismissed as to the Secretary.

Plaintiff has not alleged fraud on the court against the Secretary. "Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996) (citations omitted). The only allegations involving the Secretary specifically involve the 2022 Primary Election, not actions directed to the judicial machinery. Indeed, the only mention

of "fraud on the court" in Plaintiff's Complaint pertains to the alleged false stalking filing with which the Secretary clearly had no involvement whatsoever.  *See* Compl. ¶¶ 105-118.

As for the "intentional fraud" and "fraud" related to the Secretary, Plaintiff is presumably claiming that the Secretary was somehow involved in her 2022 Primary defeat and that her loss was the subject of fraud.  This cause of action fails on multiple levels.  First, fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  Yet Plaintiff's allegations are entirely conclusory and so implausible that they cannot possibly state a viable claim for relief.  In support of her theory of electoral fraud, Plaintiff alleges that: she lost her election; her percentage of the vote never wavered throughout Election Day; she did not win *any* counties even though some candidate in a different race achieved greater success than she thought possible; two people she spoke with thought that the election was rigged; fraud allegedly occurred in a county commissioner's race in which she was not involved; Dominion voting machines are used in 25% of Johnson County precincts; and the Secretary knows how voting machines tally votes.  Compl. ¶¶ 125-133.  These facts do not lay out *any* allegations of fraud.  They are merely Plaintiff's statements of personal frustration that she had little support in the Primary.  Not only do the allegations lack the particularity required by Rule 9(b), but they also fail to satisfy the lower plausibility standard demanded by Rule 12(b)(6).

Second, while it is unclear exactly what remedy Plaintiff is seeking as it relates to alleged election fraud, the *Burford* abstention doctrine counsels against the Court taking up the claim on the merits.  This doctrine, the origins of which are found in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), provides that, where timely and adequate state-court review is available, a federal court may decline to interfere with the proceedings or orders of state administrative agencies if the federal suit would: (1) present difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; *or* (2) be

disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Quackenbush v. Allstate Ins. Co*., 517 US. 706, 726-27 (1996) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)). Although the Supreme Court has suggested that this doctrine is generally reserved for extraordinary circumstances, *id.* at 726, it has also highlighted *Burford*'s importance in preserving principles of federalism and comity, *Growe v. Emison*, 507 U.S. 25, 32 (1993), and in allowing states to retain local control over difficult questions of state law bearing on important policy issues. *Quackenbush*, 517 U.S. 728 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

States have a critical interest in administering fair, orderly, and efficient elections. Kansas has enacted a specific statutory scheme for raising objections to primary outcomes. Specifically, an "election objection" – which is the formal procedure for challenging a certificate of nomination issued to a winning candidate following a primary election – must be filed with the Secretary of State's Office or the relevant election officer within three days of the issuance of the certificate of nomination. *See* K.S.A. 25-308(a)-(c). Plaintiff acknowledges that she filed an objection, but the objection was denied. Compl. ¶ 136.[2] Thus, Plaintiff was provided a full opportunity to avail herself of the state procedure in which she could have raised any issues of fraud, if she actually had evidence of them. Having elected not to pursue these fraud allegations through that elaborate state process, she should not now be heard to assert such challenges in federal court. Indeed, this is precisely the type of scenario to which *Buford* abstention was intended to apply.

The reticulated statutory structure governing Kansas' elections requires interpretation from the state courts, and the State's interest in resolving these issues cannot be overstated. If Plaintiff wanted to raise those issues, she could and should have pursued her objection before the objections

---

[2] In fact, Plaintiff did not appear at the objection board nor present any evidence to the Board supporting her objection.

board established under K.S.A. 25-308(c).  By seeking a remedy in federal court, Plaintiff is now attempting to use this Court to circumvent the State's election process.

Particularly relevant here is the Tenth Circuit's decision in *Robert-Gay Energy Enters., Inc. v. State Corp. Comm'n*,  753 F.2d 857 (10th Cir. 1985).  In that case, the plaintiff sought an allowable bonus on an oil well from the Kansas Corporation Commission (KCC).  After the KCC denied the plaintiff's application, the plaintiff sued in federal court, seeking injunctive relief and alleging that the KCC's decision constituted a taking of property without just compensation in violation of the Fourteenth Amendment.  *Id.* at 858-59.  On appeal, the Tenth Circuit held that *Burford* abstention was proper because of a state law directing that "any action for judicial review of any . . . decision of the [KCC] may be brought against the [KCC] in the district court of any county in the state wherein the property affected thereby is located."  *Id.* at 860.  "If adequate state court review of an administrative order based upon predominantly local factors is available," the Tenth Circuit reasoned, then "intervention of a federal court is not necessary for the protection of federal rights."  *Id.* (citing *Alabama Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 349 (1951)).  Given that the same principles are applicable to the case at bar, Defendant respectfully suggests that this Court abstain from taking up Plaintiff's various fraud causes of action against the Secretary.

### 7.  Count 7

Count 7 alleges a malicious prosecution, but there is no way in which the Secretary could have been involved in any such matter and Plaintiff alleges no facts suggesting as much.  As best the Secretary can tell, this claim appears to be rooted in purportedly false "stalking" and contempt charges against her.  Compl. ¶ 187.  But she pleads no connection between these charges and the Secretary.  *See* Compl. ¶¶ 104-117 (identifying the Defendants involved in the alleged stalking

and contempt filings).  The Secretary does not even have the authority to file a stalking or contempt charge.[3]  As a result, the claim must be dismissed against him.  *See Nelson v. Miller*, 607 P.2d 438, 442-43 (Kan. 1990) (outlining elements of malicious prosecution claim under Kansas law, one of which is that the defendant must have initiated, continued, or procured the prosecution or civil suit against the plaintiff).

### 8.  *Count 8*

In Count 8, Plaintiff alleges a claim of intentional infliction of emotional distress (often referred to as the tort of "outrage") based on the same conduct undergirding her other causes of action.  Once again, the Court has discretion over whether to take up this state law claim as part of its supplemental jurisdiction under 28 U.S.C. § 1367(a).  Assuming it does so, the cause of action must be dismissed for failure to state a claim.

Kansas has set a "high standard for the tort of intentional infliction of emotional distress." *Boe v. AlliedSignal Inc.*, 131 F. Supp.2d 1197, 1205 (D. Kan. 2001).  To establish such a claim, a plaintiff must demonstrate that: (1) the defendant engaged in conduct in intentional or reckless disregard of the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe.  *Id.*; *see also Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman,* 978 P.2d 922, 930 (Kan. 1999)).  Not only must the defendant's conduct be "regarded as so extreme and outrageous as to permit recovery," but the plaintiff's emotional distress must have been "so severe that no reasonable person should be expected to

---

[3] Although Plaintiff notes that the Secretary has prosecutorial authority, Compl. ¶ 9, that authority is limited to "any act that constitutes a Kansas elections crime defined in K.S.A. 25-1128, and amendments thereto, or article 24 of chapter 25 of the Kansas Statutes Annotated, and amendments thereto[.]"  K.S.A. 25-2435(a).  Stalking and contempt are not found in article 24 of chapter 25.  *See* K.S.A. 21-5427 (stalking); 59-2217a (contempt of court).

endure it." *Miller*, 978 P.2d at 930.  In order for conduct to meet this threshold, "it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (citation omitted).

Plaintiff's outrage claim falls far short of satisfying this standard.  She offers nothing more than conclusory allegations that her election was "rigged" and she alleges no actual conduct that the Secretary personally undertook.  She suggests that Senator Moran conspired with the Secretary "to ensure than an algorithm was used to suppress plaintiff's votes," and she claims that this was apparently possible because the Secretary "know[s] how to rig" elections," and is "aware of the internal operations of how . . . voting machines tally votes." Compl. ¶¶ 125-126.  But such wildly conclusory allegations demonstrate no outrageous conduct on the part of the Secretary.  *See Frey*, 41 F.4th at 1233 ("Conclusory allegations are not entitled to the assumption of truth.").  As noted previously, individual counties – not the State – maintain and possess voting machines and are responsible for administering elections in Kansas.  Plaintiff's allegations that *the Secretary* rigged her election, therefore, is implausible fantasy.

Moreover, Plaintiff fails to allege how her claimed injuries were causally connected to the rigged election rather than her other conspiracy theories.  Plaintiff avers that she suffered increased anxiety, insomnia, a ruptured disc in her neck, hair loss, and two skin cancers on her left leg. Compl. ¶¶ 137, 198.  But according to her own Complaint, all of these ailments occurred *before* she discovered that her 2022 Primary Election had allegedly been rigged.  Indeed, she described these ailments in Paragraph 118 of her Complaint, which supposedly arose from (i) CIA operatives attempting to murder her between 2006 and 2016, Compl. ¶ 69; (ii) issues involving her former boyfriend and her social media being monitored, Compl. ¶¶ 58-68, 71-82, and (iii) her prosecution in 2021 on purportedly false stalking charges.  Compl. ¶ 118.

Finally, Plaintiff's alleged injuries are insufficient to support a tortious outrage claim as a matter of law.  There is no plausible explanation how a "rigged election" would cause a ruptured disk, hair loss, or skin cancer.  At best, Plaintiff is alleging that she has experienced anxiety, stress, and difficulty sleeping.  Even if these ailments were plausibly connected to her allegations against the Secretary, none are so significant that they would warrant recovery for intentional infliction of emotional distress under the incredibly high standard imposed by Kansas courts.  *See Valadez v. Emmis Commc'ns*, 229 P.3d 389, 395 (Kan. 2010) ("anxiety" and "nervousness" are insufficient to state a claim for outrage); *S. Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F. Supp.2d 1257, 1265 (D. Kan. 2010) ("stress" and "anxiety" are insufficient); *Byle v. Anacomp*, 854 F. Supp. 738, 748 (D. Kan. 1994) (insomnia and elevated blood pressure are insufficient).  In sum, Count 8 must be dismissed for failure to state a claim.

## IV. – Conclusion

For all these reasons, Plaintiff's Complaint must be dismissed for (i) lack of subject-matter jurisdiction and (ii) failure to state a claim upon which relief can be granted.  Although the official capacity claims to which sovereign immunity applies should be dismissed *without* prejudice, *see Brereton v. Bountiful City Corp.*, 434 1213, 1216 (10th Cir. 2006) (dismissal for lack of subject-matter is without prejudice), the Secretary asks that the individual capacity claims be dismissed *with* prejudice.  *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("it is appropriate to dismiss without allowing amendment where it is obvious that the plaintiff cannot prevail on the facts she has alleged and it would be futile to give her an opportunity to amend.") (citation and internal alterations omitted).

Respectfully Submitted,

By: /s/ Bradley J. Schlozman
Bradley J. Schlozman (KS Bar #17621)
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206
Tel.: (316) 267-2000
Fax: (316) 630-8466
E-mail: bschlozman@hinklaw.com

Garrett R. Roe (KS Bar #26867)
**HINKLE LAW FIRM LLC**
8711 Penrose Lane, Suite 400
Lenexa, KS 66219
Tel:  (913) 345-9205
Fax: (913) 345-4832
Email: groe@hinklaw.com

*Attorneys for Secretary of State Scott Schwab*

**<u>CERTIFICATE OF SERVICE</u>**

 I certify that on December 15, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses on the electronic mail notice list.


        By: <u>/s/ Bradley J. Schlozman  </u>