Joan E. Farr                                                    **EXHIBIT A**
7145 Blueberry Lane
Derby, KS  67037
Phone: 918.698.3289
JoanFarr73@aol.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Joan E. Farr, individually, *pro se,* | ) | |
| and in the interests of American citizens, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:22-cv-2476-DDC-GEB |
| | ) | |
| United States Government, Department of Defense, | ) | |
| Department of Justice, United States Senator James Inhofe, | ) | |
| Luke Holland, United States Senator Jerry Moran, State of | ) | |
| Kansas, Kansas Secretary of State Scott Schwab, Federal | ) | |
| Bureau of Investigation, Central Intelligence Agency, Christine | ) | |
| Curry, Internal Revenue Service, Assistant United States | ) | |
| Attorney Christopher Allman, Attorney Rebecca Hesse, Kansas | ) | |
| Legal Services, Inc., Sedgwick County District Court, other | ) | |
| known/unknown state and government actors, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

COMES NOW the plaintiff, Joan E. Farr, individually *pro se,* and in the interests of American

citizens, and files this Second Amended Complaint against the above named defendants. Plaintiff has been

maliciously targeted by a high-powered Senator in Congress in retaliation for running against him in 2020,

and so that she would lose when she ran again in 2022. After he conspired with government agencies and

actors to sabotage her campaign and even target her loved ones, plaintiff filed a federal lawsuit in April, 2021

(**Case No. 2:21-cv-2183-JWB-TJJ / Farr I**). A few months later, the senator further conspired to file false

stalking charges to try and intimidate her to drop the suit and then contempt charges to have her committed

so that no one would vote for her. In January, the court dismissed the aforementioned suit, mainly because

plaintiff failed to first file under the FTCA against the federal defendants. When she did so in February 2022,

the senator resigned two days later. She then had to file a second suit for malicious prosecution before the

statute of limitations ran which is filed in conjunction with this case (**Case No. 2:22-cv-2120-DDC-KGG /**

1

**Farr II**). It was dismissed by Judge Daniel Crabtree on December 20, 2022; however, plaintiff filed a motion to reconsider. She previously filed two Form 95s against the federal defendants which were denied, and now files this third suit in order to preserve the six-month statute of limitations for filing suit against the federal defendants. This suit is being referred to as **Farr III**.

## A. PARTIES

1.    Plaintiff, Joan E. Farr, is an individual representing herself *pro se* with residence located at 7145 Blueberry Lane, Derby, Kansas 67037. Plaintiff, Joan Farr, is hereinafter referred to as the same, "Farr" or "Ms. Farr."

2.    Defendant, the United States Government,* is a government entity with principle offices located at the Office of United States Attorney General, Merrick B. Garland, at his principle place of business, the Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530. Defendant, the United States Government may be served by and through their counsel, United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683. Defendant, the United States Government, is hereinafter referred to as the same, "the government," "DOD," "DOJ," "FBI," "CIA," "IRS," "U.S. Senator James Inhofe," "U.S. Senator Jerry Moran," "alphabet soup," and any and all of the other defendants referred to herein, as well as any other known/unknown state/government actors.

3.    Defendant, the Department of Defense and its agencies thereof* (also referred to as "DOD," "alphabet soup," or "the government"), is a government entity with principle offices located at The Pentagon, Washington, D.C. 20301-1155. This agency may be served by and through United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

4.    Defendant, the Department of Justice and its agencies thereof,* (also referred to as "DOJ," alphabet soup" or "the government") is a government entity with principle offices located at 950 Pennsylvania Avenue NW, Washington, D.C. 20530. This agency may be served by and through United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

5.    Defendant, United States Senator James Inhofe* (also referred to as "Senator Inhofe," "Luke

2

Holland," "the government") is an individual who worked for the United States government as a senator in Congress and acted to represent the people of the State of Oklahoma in federal matters with offices located at 3817 NW Expressway #780, Oklahoma City, Oklahoma 73112. He may be served summons at the office of United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

6.    Defendant, Luke Holland* (also referred to as "Senator Inhofe" and "the government" since he acted on their behalf) is an individual who worked for the United States government as the Chief of Staff for defendant United States Senator James Inhofe and acted on his behalf and at his direction in regard to federal matters in the State of Oklahoma with office located at 3817 NW Expressway #780, Oklahoma City, Oklahoma 73112. He may be served summons at the office of United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

7.    Defendant, United States Senator Jerry Moran* (also referred to as "Senator Moran" or "the government") is an individual who works for the United States government as a senator in Congress acting to represent the people of the State of Kansas in federal matters with office located at 100 N.Broadway, Suite 210, Wichita, Kansas 67202. He may be served summons at the office of United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

8.    Defendant, the State of Kansas* (also referred to as "the government") was admitted in 1861 as the 34th State of the United States of America. The State of Kansas is comprised of a governor, secretary of state, attorney general and other offices designated to handle the affairs of the State of Kansas with the attorney general's office located at Memorial Hall, 2nd Floor, 120 SW 10th Avenue, Topeka, Kansas 66612-1597. The state may be served summons by and through their attorney, Stephen Phillips, Kansas Assistant Attorney General, Civil Litigation Division, 120 SW 10th Avenue, Second Floor, Topeka, Kansas 66612.

9.    Defendant, Kansas Secretary of State Scott Schwab* (also referred to as "State of Kansas" and the government") is the chief elections officer of the State of Kansas in charge of administering elections and voter registration throughout the state with office located at Memorial Hall, 1st Floor, 120 SW 10th Avenue, Topeka, Kansas 66612-1597. He may be served by and through his attorney, Bradley J. Schlozman, Hinkle

3

Law Firm, LLC, 1617 North Waterfront Parkway, Suite 400, Wichita, Kansas 67206.

10.     Defendant, the Federal Bureau of Investigation and its state agencies thereof* (also referred to as "FBI," "DOJ," "alphabet soup" and "the government"), is a government entity with principle offices located in Washington, D.C.  This agency may be served by and through its counsel, United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

11.     Defendant, Central Intelligence Agency* (also referred to as "CIA," "Christine Curry," "alphabet soup" and "the government") is a government entity with principle offices located at CIA Headquarters, Washington, D.C.  20501.  This agency may be served by and through its counsel, United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

12.     Defendant, Christine Curry* (also referred to as "CIA," "alphabet soup" and "the government") is an individual and state actor who works as a contractor for the Central Intelligence Agency and has been posing as a licensed practical nurse in Wichita area hospitals. Her current address is unknown; however, she may be served summons at the office of her attorney, Timothy J. Finnerty, Wallace Saunders Austin Brown & Enochs, Chtd., 200 West Douglas, Suite 400, Wichita, Kansas 67202.

13.     Defendant, Internal Revenue Service* (also referred to as "IRS," "alphabet soup" and "the government") is a government entity with principle offices located at 1111 Constitution Avenue, NW, Washington, D.C.  20224. This agency may be served by and through United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

14.     Defendant, Assistant United States Attorney Christopher Allman* (also referred to as "the government," "DOD," "DOJ," "FBI," "CIA," "IRS," "alphabet soup," "United States Attorney Duston J. Slinkard," "Senator Inhofe," "Senator Moran," and any and all of the other defendants referred to herein, as well as any other known/unknown state/government actors) is an assistant United States attorney with principle offices located at 500 State Street, Suite 360, Kansas City, Kansas 66101. He may be served by and through United States Attorney Duston J. Slinkard, U.S. Attorney's Office – Kansas, 444 SE Quincy, Suite 290, Topeka, Kansas 66683.

15.     Defendant, Attorney Rebecca Hesse* (also referred to as "Attorney Hesse," "KLS," "Kansas

Legal Services, Inc.") is a Wichita area attorney with offices located at 340 South Broadway, 2nd Floor, Wichita, Kansas 67202. Wichita, Kansas 67202. She may be served at the office of her attorney, Timothy J. Finnerty, Wallace Saunders Austin Brown & Enochs, Chtd., 200 West Douglas, Suite 400, Wichita, Kansas 67202.

16.     Defendant, Kansas Legal Services, Inc.* (also referred to as "KLS" and "Attorney Rebecca Hesse") is a non-profit organization located at 712 S. Kansas Avenue, Suite 201, Topeka, Kansas 66603. They may be served at the office of their attorney, Timothy J. Finnerty, Wallace Saunders Austin Brown & Enochs, Chtd., 200 West Douglas, Suite 400, Wichita, Kansas 67202.

17.     Defendant, District Court of Sedgwick County* in Wichita, Kansas (also referred to as "Sedgwick County Court," "Judge Phil Journey," "Judge David Dewey," "Judge *pro tem* Clark Owens," and "the government," is a Kansas government entity with principle offices located at 525 N. Main, Wichita, Kansas 67211. This court may be served by and through their attorney, Stephen Phillips, Kansas Assistant Attorney General, Civil Litigation Division, 120 SW 10th Avenue, Second Floor, Topeka, Kansas 66612.

18.     Other known/unknown state and government actors* include any and all other known/unknown state and/or government actors working within or for the United States government and its federal agencies thereof, as well as for the State of Kansas.

**\*NOTE**: All of the above defendants acted in privity and were ultimately directed by U.S. Senator James Inhofe by and through his Chief of Staff Luke Holland and U.S. Senator Jerry Moran through Asst. U.S. Attorney Christopher Allman, to target plaintiff and violate her civil rights. Therefore, they are referred to collectively throughout this Second Amended Complaint as "**the government defendants**." Plaintiff reserves the right to amend her pleadings to comply with Federal and State Rules regarding newly discovered facts and/or to correct any deficiencies to defend against failure to state a claim or jurisdictional/venue requirements.

## B.   FACTS PERTAINING TO THE PARTIES

19.     Plaintiff Joan Farr is an individual residing at 7145 Blueberry Lane, Derby, Kansas.

20.     Ms. Farr is a resident of Sedgwick County in the state of Kansas which is in the United States of America. She has been falsely targeted by the United States government under a National Security Letter since approximately 2001.

21.     Defendant, the United States Government, consists of a President, his cabinet, Congress and various local, state and national actors and entities engaged in authoritative control and governance of the

United States of America. The current president is President Joseph Biden. The United States Government is represented in this action by 23 agencies, bureaus or offices. The principle members are the Department of Defense, Department of Justice, Federal Bureau of Investigation, Central Intelligence Agency, Internal Revenue Service, Oklahoma U.S. Senator James Inhofe and Kansas U.S. Senator Jerry Moran.

22.     Defendant, the Department of Defense (DOD), is an agency under the President that is engaged in defending the United States of America against attacks by foreign countries as well as attacks within by both foreign and domestic individuals and/or entities. They also conduct surveillance on the American people.

23.     Defendant, the Department of Justice (DOJ), is a federal executive department of the U. S. government responsible for the enforcement of the law and administration of justice in the United States. They also conduct surveillance on the American people using the FBI, CIA and other agencies which are commonly referred to as "alphabet soup."

24.     Defendant, United States Senator James Inhofe, is a Republican United States Senator from the State of Oklahoma. He is a career politician who has been in politics for 56 years and Congress for 35 years. He served as Chairman of the Armed Services Committee from 2017 – 2020 under President Trump.

25.     Defendant, Luke Holland, is the chief-of-staff for United States Senator James Inhofe from the State of Oklahoma. He is most likely a CIA contractor and handles all of the dirty work for Senator Inhofe.

26.     Defendant, United States Senator Jerry Moran, is a Republican United States Senator from the State of Kansas. He is a career politician who has been in politics for 40 years and Congress for 26 years.

27.     Defendant, the State of Kansas, was admitted in 1861 as the 34th State of the United States of America. Defendant, the State of Kansas, is comprised of a governor, secretary of state, attorney general and other offices designated to handle the affairs of the State of Kansas.

28.     Defendant, Kansas Secretary of State Scott Schwab, was elected to this office in 2018 when Kansas first acquired Dominion voting machines. He was granted prosecutorial power in voter fraud cases by the Kansas Legislature and is the first and only secretary of state to hold that power.

29.     Defendant, the Federal Bureau of Investigation (FBI), is the domestic intelligence and security service of the United States, which simultaneously serves as the nation's prime federal law enforcement

organization. Operating under the jurisdiction of the U.S. Department of Justice, the FBI is concurrently a member of the U.S. intelligence community and reports to both the U.S. Attorney General and the Director of National Intelligence. They also conduct surveillance on the American people.

30.     Defendant, the Central Intelligence Agency (CIA), is the domestic intelligence and security service of the United States. Defendant, the Central Intelligence Agency, is a member of the U.S. intelligence community and reports to the President of the United States and the Director of National Intelligence. They also conduct surveillance on the American people.

31.     Defendant, Christine Curry, is a state actor and is a Kansas resident who lives in Derby, Kansas. In addition to her employment in a Wichita area medical facility as a licensed practical nurse but without a license, she has been employed by the CIA as a contractor and "poser" to conduct surveillance on plaintiff and engage in a romantic relationship with her old boyfriend to break them up, steal his assets and possibly cause him bodily harm and/or death.

32.     Defendant, the Internal Revenue Service (IRS), is a federal executive department of the United States government responsible for administering and enforcing federal tax laws in the United States. There are two separate divisions of the IRS called the "Master File Unit" and the "Non-master File Unit," the latter of which is used by government politicians and others to target innocent Americans and business entities.

33.     Defendant, Assistant United States Attorney Christopher Allman, is an assistant United States Attorney in the civil division with the Department of Justice in Kansas City, Kansas.

34.     Defendant, Kansas Legal Services, Inc., is a non-profit organization that is affiliated with the state of Kansas and who conspired with the government defendants to target plaintiff with false stalking and contempt charges to try and have Ms. Farr incarcerated and/or committed so that no one would vote for her in her 2022 run for the U.S. Senate.

35.     Defendant, Attorney Rebecca Hesse, is an attorney employed by Kansas Legal Services, Inc. to represent defendant Christine Curry and who conspired with the government defendants to target plaintiff with false stalking and contempt charges to try and have Ms. Farr incarcerated and/or committed so that no one would vote for her in her 2022 run for the U.S. Senate.

7

36.     Defendant, Sedgwick County District Court is a government entity with judges and other state actors representing the District Court of Sedgwick County. It is located in Wichita, Kansas, which is in Sedgwick County, Kansas.

37.     All of the above defendants are government and state actors, employees, subcontractors and/or entities of the United States government. They all had knowledge of this matter and were involved in the conspiracy/collusion and fraud to deny plaintiff's rights which resulted in outrageous government conduct.

## C.  FACTS PERTAINING TO THE CASE

38.     Plaintiff Joan Farr is a 67-year old widow whose main residence is in Kansas. She has lived in the Derby / Wichita area for over 58 years.

39.     Ms. Farr has never been charged with any crime.

40.     Plaintiff's current income is approximately $ 40,260.00  annually which she receives from Social Security and pensions. She is semi-retired as a pre-litigation consultant and has never been a lawyer.

41.     On October 2, 1999, Ms. Farr made the front page of the paper as the first woman homebuilder in the Wichita area. Male builders worried that she would take away their business, so they put her under and 45 lawyers were influenced not to represent her in a lawsuit she filed to save her business. It was dismissed all the way up, and she has not been able to acquire representation by a lawyer since then.

42.     At some point between 2001-2003, the government put plaintiff and her family members under constant surveillance by falsely issuing a National Security Letter against her which put her on the FBI National Security Terrorist Watchlist. She tried everything she could to get it removed, but nothing worked.

43.     This experience led Ms. Farr to write a book, and from 2003 – 2019, she was the C.E.O./ Founder of the Association for Honest Attorneys (A.H.A!), a non-profit organization to help people find honest lawyers, improve the legal system and seek "justice for *all*." It was an educational organization but also faith-based, since they always quoted the Bible in their newsletters.

44.     Plaintiff was C.E.O. of the A.H.A! from 2003 – 2019. During that time, she helped thousands of innocent people who were taken advantage of by unethical attorneys or who were being targeted by the government, mostly women and Christians. The A.H.A! began a quarterly newsletter, created a list of

8

"Lawyers to Avoid & Consider" and would often help people sue lawyers and other government officials.

45. As a result, plaintiff was well-known locally and nationally by the government defendants.

46. When plaintiff found out her father died in Viet Nam trying to save his wingman's life, then Congressman Jerry Moran pretended to help her get the Medal of Honor. But he was just trying to get votes.

47. The government ruined plaintiff's businesses, persecuted her children, ran her out of money, caused her health problems, and her husband died from the stress at age 50 in 2006.

48. In 2013, she relocated her business to Tulsa and later bought a small home there.

49. Plaintiff did not date anyone for 10 years and chose instead to focus on raising her sons and continuing her non-profit work.

50. In December 2016, Ms. Farr began dating her old boyfriend from high school. They continued an intimate and serious relationship for over three years.

51. In March 2020, plaintiff decided to run as an Independent candidate for the United States Senate in Oklahoma where she had relocated her business in 2013.

52. Farr used mostly her own money to run for office, even though she didn't have much. She had never taken a salary as C.E.O. of the A.H.A! and except for 2019 when she got a windfall, her family had been living at poverty level for over 15 years.

53. At that time, her opponent was incumbent Republican Senator James Inhofe who was 86 years old. He was a wealthy career politician who had been in Congress for 33 years and politics for 53 years.

54. Senator Inhofe earned $176,000 annually as a United States Senator. He is the 18th wealthiest senator in Congress and is reportedly worth an estimated $7.5 million dollars.

55. From 2018 – 2020, Senator Inhofe was Chairman of the Armed Services Committee over all of the United States military. The military conducts surveillance on people using various methods, the majority of which is done electronically through their cell phones, computers and other devices.

56. Plaintiff had met Senator Inhofe at a fundraising event in Tulsa in late October, 2018. In early November, his office contacted her to offer her assistance in acquiring the Medal of Honor for her father killed in Viet Nam. She told them that his colleague, Senator Moran in Kansas, had all of her documents.

57.   Plaintiff later wrote a check to "Friends of Jim Inhofe" to thank him, but he never helped her.

58.   On April 8, 2020, plaintiff filed to run for the United States Senate in Oklahoma against defendant Senator Inhofe.

59.   On April 9, 2020, Senator Inhofe wrote a letter to Ms. Farr thanking her for her "generous contribution to his re-election campaign." **(EXHIBIT A)**

60.   After receiving his letter on or about April 14, 2020, Ms. Farr posted a copy of it on Facebook. She commented that this was not actually true, she had donated $1,000 to him two months prior for his assistance in helping her acquire the Medal of Honor for her father killed in Viet Nam.

61.   However, she quipped in her post, that since Senator Inhofe wasn't able to accomplish this, she would have to help her father get the medal when she got into office.

62.   He and the government defendants had been monitoring plaintiff on social media, and on or about April 16, 2020, they targeted a close family member of plaintiff's and gave him Covid using Directed Energy Weapons (DEW). He was sick for three weeks and recovered, but his roommate later died.

63.   A National Security Letter had been issued against him as well, when he was 14 years old.

64.   It was at this point that plaintiff realized that Senator Inhofe was involved in conspiracy and collusion with the government defendants and state actors to target her and her loved ones just for running against him. Hereinafter, this is referred to as the "schemed plan" which was largely carried out at the direction of his chief-of-staff, defendant Luke Holland, who is very likely a CIA contractor.

65.   Shortly thereafter, Ms. Farr sent an email to Senator Inhofe telling him that she would have to sue him if he did not stop targeting her and her family. He responded by retaliating to break up her relationship with her soul mate who had just made a $100 donation to her campaign on line in April 2020.

66.   The government defendants were also concerned that he might then finance her whole campaign.

67.   In late May, 2020, plaintiff's old boyfriend told her he was interested in another woman named Christine whom he had taken to lunch a few times. Plaintiff was upset and ended their relationship.

68.   In late summer 2020, plaintiff's ex told her in a phone conversation that he had just kept running into Christine, that she was an LPN, and that she'd had a falling out with the Catholic church and now she

10

just helped out at different churches.

69.     Plaintiff knew from her past non-profit work that the government uses spies to monitor churches for compliance with non-profit rules and regulations and also to discreetly cause death in Wichita area hospitals. She herself had been illegally under surveillance and harassed for years in hospitals by CIA contractors and state actors due to the National Security Letter that had been issued against her.

70.     Plaintiff was certain that Christine (last name "Curry" was unknown to her at the time) was a "poser" for the CIA and that she was conducting surveillance on her and her ex to break up their relationship.

71.     Ms. Farr told her ex that she was a "poser" working for the government, but he didn't believe her.

72.     The CIA hires self-employed contractors and are well-known for their clandestine activities which includes surveillance and targeting of innocent people, money laundering and discreetly causing the deaths of people in the hospital from "natural causes." They have been affiliated with McConnell Air Force Base and have been operating in the Wichita, Kansas area for many years.

73.     Their operatives have tried to discreetly kill plaintiff on numerous occasions while she was in the hospital for surgeries from 2006-2016. They succeeded in killing a woman named Sharon Frank in 2006 using the same "steroid cocktail mix I.V." they tried on her (See Case No. 09-4146-RDR-KGS).

74.     In her past non-profit work, plaintiff had been involved in many cases in Kansas where members of the government were using lawyers and/or government operatives to fraudulently extort money into the legal system from unsuspecting wealthy people, mainly in divorce/custody battles.

75.     Ms. Curry was hired at the direction of Senator Inhofe to conduct surveillance on plaintiff and engage in a romantic relationship with her ex using mind-control to break them up and steal his assets.

76.     Senator Inhofe and the government defendants knew from monitoring plaintiff's phone texts that she was deeply in love with her old boyfriend, and that by placing a younger attractive woman in his path who had his similar interest in cycling that this would break up plaintiff's relationship with him.

77.     Plaintiff was devastated when they did not make up right away like they usually did when they had a tiff. She became severely depressed and could hardly campaign.

78.     Senator Inhofe and government state actors continued to try and sabotage plaintiff's campaign.

11

Plaintiff's website domain company confirmed that incoming emails to her had been blocked by AOL/ Yahoo for months, and she was unable to respond to a few emails that did come through.

79.     Farr's social media accounts and some online donations were also being blocked, so she filed a report with the FBI on July 6, 2020. They did not respond.

80.     It was apparent to Ms. Farr that her social media accounts including Facebook were being illegally surveilled by Senator Inhofe and the government to subvert her campaign. He was also controlling mainstream media to keep her from acquiring publicity so voters wouldn't know about her.

81.     In August, 2020, plaintiff spoke to a man named Steve Clark in the Wichita area who admitted to her that he had been a "poser" and had worked for the government. He told her that after he had gotten out of the Air Force, the CIA and FBI in Wichita had approached him to spy at a company, and although he was never asked to break up a relationship, he knew that it went on (**EXHIBIT B**).

82.     Plaintiff tried her best to get involved in campaigning. She was invited to attend a "Boots, Bandanas & BBQ" event at the governor's mansion in Oklahoma on September 2, 2020, so she went.

83.     There she met a man who told her he had planned to run against Senator Inhofe 15 years earlier. However, he said he backed out when Senator Inhofe threatened him and got his wife fired.

84.     Of course, Ms. Farr lost badly to Senator Inhofe in the November 2020 election.

85.     Due to Senator Inhofe's abuse of power and the actions of the government defendants to cause her emotional distress and bodily harm, plaintiff suffered severe depression and could no longer engage in her normal business activities. She lost significant income and retired on December 31, 2020.

86.     During her campaign and up until February 2021, plaintiff had contacted Senator Inhofe's office on four separate occasions telling him she would have to sue him if he did not stop targeting her and asked him to send Christine on another assignment. He refused to respond and only targeted her more.

87.     Ms. Farr was further depressed after seeing the fraud that occurred to keep President Trump from being re-elected. In late January, 2021, she shut down her websites and decided to go "off the grid."

88.     In March, 2021, plaintiff contacted senators in Kansas and Oklahoma to help expedite her efforts to adopt a little girl in another state and to end the targeting against her once and for all.

89.   On the early morning of Friday, March 26, 2021, she mentioned in a telecon to an assistant at the Kansas senator's office that she just wanted to adopt a little girl and move away. This triggered Senator Inhofe to target plaintiff again and try to obtain $109,000 in back taxes she never really owed.

90.   On Monday, March 29, 2021, Ms. Farr received a certified letter from the IRS notifying her of their intent to levy liens on her homes in Kansas and Oklahoma that she had been trying to sell.

91.   When she called the IRS that day, Agent Joseph Ibarra told her that they had already filed liens against both of her houses and that she would be getting another letter to this effect soon (**EXHIBIT C**).

92.   This made no sense since in May 2019 after receiving a lump sum of $48,000 from a client, plaintiff had tried to offer this money as a compromise through both the IRS and Senator Inhofe's office when she didn't even owe it. They did not respond, so she went on to buy her small home in Tulsa.

93.   Plaintiff never owed the IRS $109,000 or any back amount. She had always paid her taxes, but the IRS fabricated these numbers from an audit of her non-profit organization in 2013.

94.   In fact, non-profit groups like plaintiff's organization (the A.H.A!) who had used the words "Tea Party" or "patriot" in their literature were targeted by the IRS during that time. IRS official Lois Lerner was later fired, and the groups had won a $3.5 million settlement against the IRS.

95.   Now the IRS liens were causing plaintiff to lose a contract on a property she was trying to buy in another state, and she stood to lose over $60,000 in equity if she sold her home in Tulsa.

96.   Plaintiff suffered mental anguish wondering if she was going to end up out on the street.

97.   In late March 2021, plaintiff became aware that her ex was fixing up his basement with the intent of having Christine move in. She feared that this would lead to her illegally extorting his assets and converting them to the government defendants – another "mission accomplished."

98.   On April 6, 2021, plaintiff was so distraught that she had a meltdown at her Bible study. The thought of her ex losing his money or his life at the hands of Curry caused her such mental anguish that she ruptured a disc in her neck. She was on medication and had to see an acupuncturist and chiropractor.

99.   On April 7, 2021 in an e-mail exchange with a Kansas senator's office, plaintiff tried to find out what agency Christine worked for so they could direct a congressional inquiry. They refused to

tell her which agency Christine worked for, stating that this would be "unethical, unprofessional and illegal" according to the US Board of ethics rules and regulations.

100.  Plaintiff asked which rule they were referring to, but they could not cite any.

101.  In truth, the government did not want Christine's identity revealed in the same way that **Valerie Plame** had been outed as a CIA agent in 2003. Since Christine was about to make them a lot of money by swindling plaintiff's ex, they didn't want to risk losing it.

102.  On April 21, 2021, plaintiff filed a lawsuit in federal court against the government defendants (Senator Inhofe, the DOD, DOJ, FBI, CIA, IRS, and Christine (last name unknown at the time) for violating her rights which included the same claims in this lawsuit (**Case No. 2:21-cv-2183-JWB-TJJ**). At the time, she was unaware of what Christine's last name was or where she lived.

103.  In late July, 2021, plaintiff drove by her ex's house and saw a car in the driveway. She believed this to be Ms. Curry's vehicle and asked a private investigator to run the license plate.

104.  The private investigator advised plaintiff that defendant Christine's last name was Curry and that her address was that of plaintiff's ex. Only then did she know that Ms. Curry had moved in with him.

105.  Private investigators advised plaintiff that Curry had moved 15 times in the Wichita area in 15 years (extorting money from unsuspecting wealthy men), and that she was operating as an LPN in Wichita hospitals for over 20 years without a license.

106.  Plaintiff also learned that defendant Curry had bought a house in May 2019 with a 56-year old man named Craig Charles and had used the name "Barbara Milligan" as an alias in the past.

107.  After finding out that Christine's last name was "Curry," plaintiff then had to try four times to effect proper service of her lawsuit on her. Curry was avoiding service and plaintiff had to hire a process server who finally taped it to the door of her residence.

108.  Defendant Ms. Curry was unable to acquire an attorney to represent her and became extremely distraught. In early August, 2021, she then filed false stalking charges against plaintiff as part of the "schemed plan" to intimidate her into dropping her federal suit (**Case 2021-DM-004573-PS).**

109.  With no evidence against her, Sedgwick County Court Judge Phil Journey signed off on Curry's

14

stalking charge and Judge David Dewey denied plaintiff's attempt to file a stalking order on Ms. Curry. They acted in privity to commit fraud on the court with the government defendants and deny plaintiff due process.

110. The defendants repeatedly sent Sedgwick County sheriffs to plaintiff's door to stress her out.

111. On August 26, 2021, plaintiff announced on social media that she was running for the United States Senate in Kansas in Oklahoma in 2022.

112. On September 2, 2021, plaintiff attended a hearing where Ms. Curry was unrepresented and pretended to be deathly afraid of her. Ms. Curry accused plaintiff of needing mental help and pressured her ex under duress to say that he thought she might be delusional.

113. To further retaliate against plaintiff, Ms. Curry then conspired with U.S. Attorney Christopher Allman to help her acquire counsel through Kansas Legal Services, Inc. (KLS), and she hired Attorney Rebecca Hesse who had her own practice called Law Offices of Rebecca Hesse but also worked for KLS.

114. Plaintiff was fed up. She sent an email to U.S. Attorney Christopher Allman telling him to cease and desist harassing her or she would sue him, Curry and others for conspiring against her (**EXHIBIT D**).

115. On or about September 6, 2021, state actors Curry, Hesse and Legal Aid conspired with U. S. Attorney Allman (at the direction of Senator Inhofe and his chief-of-staff, Luke Holland, with Senator Moran as co-conspirator) to have Curry bring false contempt charges against plaintiff for sending copies of court documents to Curry in her federal suit.

116. These state actors knew all along that plaintiff was legally required to do this and that legal documents were exempt from stalking charges under **K.S.A. 60-31a06(g)** which states: "A non-contact or restraining provision in a protective order issued pursuant to this section shall not be construed to prevent.. (3) a defendant or defendant's attorney from sending plaintiff copies of any legal pleadings filed in court relating to civil or criminal matters presently relevant to the plaintiff."

117. Allman, Hesse, KLS and Curry then conspired with Senator Inhofe, Senator Moran and others to charge plaintiff with contempt for continuing to send Curry letters which she never opened and were obvious copies of court documents. They were trying to defame her and put her in jail!

118. Plaintiff had a lawyer friend who offered to review the court documents filed by these state actors.

He told her they weren't just trying to put her in jail to get her to drop the federal suit, they were trying to get a psyche evaluation to have her committed so no one would vote for her in the upcoming 2022 election.

119.    Plaintiff's discovery of K.S.A. 60-31a06(g) was clear and convincing evidence that the government defendants knowingly and maliciously filed false stalking and contempt charges to cause her intentional emotional distress and bodily harm.

120.    Plaintiff then filed documents in the stalking case to prove her claims to Sedgwick County Court, and she included the affidavit of Steve Clark.

121.    At the hearing on October 27, 2021, Judge Owen dismissed the contempt charges against Farr. His dismissal was clear evidence to prove fraud on the court by the government defendants and state actors.

122.    The stress of being persecuted with false charges, harassment by sheriffs and having to appear in court without counsel to violate plaintiff's rights caused her increased anxiety, insomnia, and exacerbated her skin cancer which had been in remission resulting in carcinoma on her leg and hair loss.

123.    The majority of plaintiff's claims were addressed in **Case No. 2:21-CV-2183-JWB-TJJ** which was filed in April, 2021 but dismissed January 13, 2022. Plaintiff had failed to first file under the FTCA.

124.    On February 3 & 18, 2022, plaintiff mailed her FTCA claim Form 95 both certified return receipt and then Fed Ex to seven different locations at the direction of FTCA lawyers. She stated her claims against Senator Inhofe and the government defendants (DOD, DOJ, FBI, CIA and IRS) including U. S. Attorney Allman and the malicious acts against her (**EXHIBIT E, p. 1 & 2 with Attachment A only**).

125.    On or about February 25, 2022, Senator James Inhofe was forced to resign from Congress as a result of plaintiff filing her FTCA claim **(EXHIBIT F)**. It was later denied on May 26, 2022 (**EXHIBIT G**).

126.    Plaintiff continued her efforts to try and campaign in her run for the United States Senate up until the day of the primary held in Kansas on August 2, 2022.

127.    On that day, plaintiff noticed from the onset with 1% of the votes in, that the votes for her opponent United States Senator Jerry Moran, stayed at a steady 78-80% rate while her votes held at 20-22% the entire night of the election. This is when she realized he was involved in the "schemed plan" as well.

128.    The State of Kansas and Kansas Secretary of State Scott Schwab are well aware of how Dominion

voting machines tally votes, since SOS Schwab is former CIA and has been involved in rigging elections since these were brought into Kansas in 2018. They rigged them against plaintiff so that she would lose.

129. Senator Jerry Moran continued the "schemed plan" of his cohort Senator Inhofe by conspiring with Kansas Secretary of State Schwab to ensure that an algorithm was used to suppress plaintiff's votes.

130. They never went any higher than 20-22%, and she lost the election.

131. SOS Schwab and the State of Kansas caused plaintiff to lose by this same margin in Sedgwick County where she has lived for 58 years. In fact, she did not win *any* counties in Kansas.

132. In contrast, the first openly gay candidate running as a Democrat in Kansas which is the "Bible Belt," came in last in his race with only 2.9% of the vote but still won his county and the county next to him.

133. On or about August 5, 2022, a former Boeing supervisor who worked with plaintiff years before messaged her on social media and said that he watched the election the whole night and believed that an algorithm was used to prevent her from winning. The government defendants were involved in the theft of his original affidavit from plaintiff's home office on August 31, 2022, and he will testify (**EXHIBIT H**).

134. A woman who helped plaintiff campaign when she ran for Kansas governor in 2010 agreed that Senator Moran and Secretary Schwab conspired to rig the votes so she would lose (**EXHIBIT I**).

135. These voters above also believe that "flipping" of votes occurred in the "Value Them Both" question that was on the ballot as well. This type of election fraud cannot be detected in a vote recount.

136. During the August 2, 2022 primary election, fraud occurred in a commissioner's race in Cherokee County, Kansas in which the votes were "flipped" from one candidate to the other (**EXHIBIT J**).

137. Plaintiff also has evidence going back to 2004 to show that "flipping" votes had been occurring in Kansas since that time. In August 2006, she tried to present this evidence to the League of Women Voters in Wichita, Kansas, but they did nothing (**EXHIBIT K).**

138. Dominion voting machines are used in Johnson County where 25% of the votes are in Kansas and are the easiest to hack. Their contracts forbid any investigation or analysis (**EXHIBIT L**).

139. On September 2, 2022, plaintiff emailed her objections to certification of the election results to Kansas Secretary of State Scott Schwab who has worked for the CIA, but these were denied (**EXHIBIT M**).

140.   The defendants had all engaged in malicious prosecution to cause plaintiff intentional emotional distress and severe mental anguish. She suffered injuries which include, but are not limited to: increased anxiety, insomnia, a ruptured disc in her neck, hair loss, and two skin cancers on her left leg.

141.   Plaintiff suffered severe emotional distress and bodily harm as the result of the defendants' conspiratorial actions spearheaded by Senator Inhofe to first retaliate against her for running against him in 2020, and then to threaten and intimidate her to keep her from becoming a senator in Congress under 42 USC 1985 (1)(2) & (3). At his direction under a "schemed plan," the government defendants' actions were malicious, willful and wanton to authorize illegal surveillance and harassment of plaintiff, illegally invade her cell phone and computer to monitor her activities, use DEW to target her and her loved ones in violation of FISA/the Patriot Act/War Crimes Act involving crimes against humanity, sabotage her campaign by blocking emails/PayPal buttons so she could not respond to inquiries or acquire donations (converting them to Senator Inhofe and/or the government defendants), use CIA mind control and nanobots to break up her relationship to cause her severe depression and loss of income, instruct the IRS to file false liens against her properties, bring false stalking and contempt charges to try and commit her so no one would vote for her, rig the primary election so she would lose, <u>and continue surveillance to threaten and intimidate her in this case.</u>

142.   The government defendants were all involved in conspiracy/collusion, fraud by commission/ intentional fraud, malicious prosecution and intentional emotional distress to deny plaintiff her civil rights. The harassment and targeting by the government defendants has been continued and ongoing retaliation to violate plaintiff's rights including her right to freedom of speech under the First Amendment.

143.   These claims are not false/frivolous/incredible due to plaintiff's past non-profit work from 2004 on. She was contacted by hundreds of innocent people who were targeted by state/govt actors due to the abuse of National Security Letters issued against them by the FBI under the Patriot Act during this time.

144.   Plaintiff has substantial evidence to prove these claims, and President Trump vowed to removed innocent people from the terrorist watchlist in his televised debate with Hillary Clinton on Sept. 29, 2016.

145.   The violation of plaintiff's rights included, but are not limited to:  the right to be free from retaliation for freedom of speech under the First Amendment to the United States Constitution, her right to

privacy under the Fourth Amendment, and her right to due process of law and equal protection under the 14th
Amendment, denial of rights under color of law 42 USC 1983, 18 USC 242 and 42 USC1985 **(1),** (2) & (3).

146.   The State of Kansas failed to incorporate HAVA Title III under the "Help America Vote Act "
HAVA, and failed to prove to plaintiff that the votes were tabulated properly and legitimately, that there
were no algorithms or other vote manipulation used to cause her to lose in the primary election. This
obstruction of justice has been proven by a preponderance of evidence in this matter.

147.   Plaintiff has exhausted all administrative efforts to try and stop the malicious threats, intimidation
and retaliation by the government defendants against her and her loved ones to cause intentional emotional
distress and bodily harm. She is justified in her claims against them for monetary damages, punitive damages
and injunctive relief since their willful acts are continued and ongoing.

148.   Such extreme targeting of American citizens who run against incumbent career politicians for a
political office is an abuse of power and outrageous government conduct which should not continue.

149.   Pursuant to Kan. Rule 9.1(f)(10), plaintiff's prayer for relief includes damages of a sum certain in
the amount of **$ 741,122,235.00** against these defendants **(EXHIBIT N)**.

150.   Plaintiff has demanded that the government defendants take action to make her whole for her
losses. They have refused plaintiff's demands.

## LAW AND ANALYSIS

All of the government defendants violated numerous national laws, statutes, ordinances and
regulations, including but not limited to: her right to freedom of speech under the First Amendment, right to
privacy under the Fourth Amendment (as incorporated to the states through the 14th Amendment) and
plaintiff's right to due process and equal protection under the 14th Amendment to the United States
Constitution, Denial of Rights Under Color of Law 42 USC 1983, 18 U.S.C. 242, 42 USC 1985 **(1),** (2) &
(3), Nuremburg Code, 18 USC 2441 War Crimes Act involving crimes against humanity, illegal surveillance
in violation of FISA and the Patriot Act Section 215, conspiracy/collusion, fraud, intentional fraud, fraud on
the court, negligence, malicious prosecution, abuse of power, intentional emotional distress, outrageous

19

government conduct/tort of outrage and the inalienable right to "life, liberty and the pursuit of happiness."

Denial of Rights Under Color of Law 42 USC 1983 states that if any person under the color of any statute, ordinance, etc. causes any other U.S. citizen to be deprived of any rights shall be liable to the party injured "in an action at law, suit in equity, or other proper proceeding for redress." This applies to the plaintiff through the states under the 14th Amendment, since "all persons shall not be deprived of …life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1. Plaintiff alleges concerted action between the federal, state and private defendants to violate her rights under color of law by their own willful and malicious conduct. In preparing this Complaint, she has complied with all required rules under Kan. Rule 9.1(f).

The government defendants conspired and acted in privity to deprive plaintiff of her rights by participating in a covert "schemed plan" directed by Senator Inhofe to intimidate, threaten, and retaliate against her just because she ran against him in 2020, and then to try and prevent her from holding public office as a member of Congress. They were able to accomplish this due to her falsely issued National Security Letter which put her on the terrorist watch list years earlier. Their overt acts of intentional fraud include, but are not limited to: illegal electronic surveillance to monitor her phone and computer, using DEW and 5G to attack her family member and give him Covid, destroying her relationship with her high school boyfriend/ soul mate using nanobots/CIA brainwashing techniques and later convert his assets to the government, sabotaging her campaign by blocking emails and donations, filing liens against her homes to deprive her of her property, engaging in malicious prosecution by bringing false stalking and contempt charges to try and have her incarcerated or committed in violation of **K.S.A. 60-31a06(g)(3)** while knowing that a restraining order does not bar mailing court documents to a party in litigation, sending sheriffs to her home to harass her, rigging her election by improperly programming the computer software using an algorithm so that her votes never tallied more than 20-22%, and other communications to deny her civil rights. The defendants clearly exceeded the scope of their employment as government officials/agencies and both monetary and punitive damages are warranted, as well as injunctive relief under 42 USC 1983.

The government defendants' retaliatory acts are indicative of legalized stealing/harassment of

plaintiff and her loved ones to violate her rights. They siphoned her donations and brought false charges to

threaten and intimidate her into dropping her prior suit (fraud on the court) and to have her incarcerated or

committed to prevent her from holding a Congressional office, and keep citizens from voting for her. This

is in violation of 42 USC 1985 – "Conspiracy to interfere with civil rights," Sections (1), (2) & (3):

> (1)…if two or more persons in any State…conspire to prevent, by force…any person from
> accepting or holding any office, trust or place of confidence under the United States…

> (2)…if two or more persons… conspire to deter by force, intimidation or threat, any party… to
> injure such party or witness… or if two or more persons conspire for the purpose of impeding,
> hindering, obstructing, or defeating in any manner, the due course of justice…with intent to deny
> to any citizen equal protection of the laws, or to injure him or his property…"

> (3)…if two or more persons conspire to deprive a person of equal protection of the laws…by **force,
> intimidation, or threat**, any citizen who is lawfully entitled to vote, from giving his support or
> advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person… as
> **a member of Congress of the United States**… or cause to be done, any act in furtherance of the
> object of such conspiracy, whereby another is injured…or deprived of… any right or privilege…
> the party so injured or deprived may have an action for the **recovery of damages**… against any
> one or more of the conspirators."

In addition, E.O. S-1233, DOD Directive S-3321.1 and National Security Directive 130 states:

"The United States military and Intelligence Communities are forbidden by law from targeting U.S.
citizens with PSYOPS within U.S. borders." Also, the federal government and its agents thereof are
prohibited from committing acts of war upon unarmed, non-combatant civilians." 18 USC 2441.

The "Help America Vote Act " HAVA, Title III requires that states develop a single, uniform,

official, centralized, interactive computerized statewide voter registration list defined, maintained and

administered at the State level. However, the State of Kansas failed to incorporate HAVA Title III, and it is

incumbent upon them to prove to plaintiff that the votes were tabulated properly and legitimately, that there

were no algorithms or other vote manipulation used to cause her to lose in the primary election. This

obstruction of justice has been proven by a preponderance of evidence in this matter. Accordingly, when

violations of HAVA, Title III have occurred, the State of Kansas must provide an appropriate remedy.

The federal court has jurisdiction in this matter under 28 U.S.C. 1331 and 28 U.S.C. 1367(a) since the

plaintiff is suing the United States government and various departments, agencies and state and government

actors, known and unknown. These ongoing atrocities are clearly *in terrorem populi* – "to the terror of the

people." Accordingly, plaintiff is justified in alleging each of the following claims against the defendants.

## D.  CAUSES OF ACTION

### 1.    Violations of Plaintiff's First Amendment Right to Freedom of Speech
### (as incorporated to the States through the 14th Amendment)

151.    Plaintiffs incorporate by reference paragraphs 1 through 150 of this (2nd) Amended Complaint.

152.    The conduct of the government defendants and state actors (Curry/Hesse/KLS and others) to act in privity and willfully participate in the "schemed plan" to engage in unwarranted and illegal domestic surveillance under the FBI National Security Watchlist to retaliate without good cause against Ms. Farr for her emailed statements directed to Senator Inhofe (i.e., her quip on Facebook, intentions to sue if he did not cease and desist targeting her) violated her right to freedom of speech under the First Amendment to the United States Constitution, as incorporated to the States through the 14th Amendment.

153.    The conduct of the above named defendants to participate in unwarranted and illegal domestic surveillance to target plaintiff was to harm her loved ones with DEW, engage in a covert operation to break up her relationship, block campaign emails and donations, file IRS liens against her properties, bring false charges against her for stalking/contempt, send sheriffs to harass her, maliciously prosecute her to try and prevent her from holding office and then rig her election in retaliation for her comments to Senator Inhofe to try and get them to cease targeting her deprived plaintiff of her right to freedom of speech under the First Amendment pursuant to color of law 42 USC 1983, 18 USC 242, 18 USC 2441, and 42 USC **(1),** (2) & (3).

154.    The above named defendants owed plaintiff a duty not to violate her right to freedom of speech under the aforementioned laws and exceeded the scope of their employment/function.

155.    The government defendants and state actors breached their duty owed the plaintiff.

156.    As a result of the government defendants' and state actors' conduct in violating Ms. Farr's freedom of speech, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

## 2. Violations of Plaintiff's Fourth Amendment Right to Privacy
(as incorporated to the States through the Fourteenth Amendment)

157.   Plaintiffs incorporate by reference paragraphs 1 through 156 of this (2nd) Amended Complaint.

158.   The conduct of the government defendants and state actors (Curry/Hesse/KLS and others) to act in privity to willfully participate in a "schemed plan" to engage in unwarranted and illegal domestic surveillance under the FBI National Security Watchlist without good cause violated plaintiff's right to privacy under the Fourth Amendment to the United States Constitution, as incorporated to the States through the Fourteenth Amendment.

159.   The conduct of the above to participate in unwarranted and illegal domestic surveillance to target plaintiff was to harm her loved ones with DEW, engage in a covert operation to break up her relationship, block campaign emails and donations, file IRS liens against her properties bring false charges against her for stalking/contempt, send sheriffs to harass her, maliciously prosecute her to try and prevent her from holding office and then rig her election in retaliation for her comments to Senator Inhofe to try and get them to cease targeting her deprived plaintiff of her right to privacy under the Fourth Amendment to the Constitution and pursuant to 42 USC 1983, 18 USC 242, 18 USC 2441 and 42 USC 1985 **(1),** (2) & (3).

160.   The government defendants and state actors owed plaintiff a duty not to violate her right to privacy under the aforementioned laws.

161.   The government defendants and state actors breached their duty owed the plaintiff.

162.   As a result of the government defendants' and state actors' conduct in violating Ms. Farr's privacy, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

## 3. Violations of Plaintiff's Fourteenth Amendment Right
to Due Process and Equal Protection Under the Law

163.    Plaintiff incorporates by reference paragraphs 1 through 162 of this (2nd) Amended Complaint.

164.    The conduct of the government defendants and state actors (Curry/Hesse/KLS and others) to act in privity and willfully participate in a "schemed plan" of engaging in unwarranted and illegal domestic surveillance and harassment of plaintiff under a National Security Letter/FBI National Security Watchlist without good cause violated her right to due process of law and equal protection under the 14th Amendment to the United States Constitution.

165.    The conduct of the government defendants and state actors to participate in unwarranted and illegal domestic surveillance to target plaintiff was to harm her loved ones with DEW, block campaign emails and donations, file IRS liens against her properties, engage in a covert operation to break up her relationship, block campaign emails and donations, file IRS liens against her properties bring false charges against her for stalking/contempt and send sheriffs to harass her, maliciously prosecute her to try and prevent her from holding office in retaliation for her comments to Senator Inhofe and then rig her election, the government defendants and U. S. Attorneys Slinkard and Allman to try and get them to cease targeting her deprived plaintiff of her right to equal protection under the Fourteenth Amendment to the Constitution pursuant to 42 USC 1983, 18 USC 242, 18 USC 2441 and 42 USC 1985 **(1),** (2) & (3).

166.    The above defendants and actors owed plaintiff a duty not to violate her right to due process and equal protection under the aforementioned laws and exceeded the scope of their employment/function.

167.    The government defendants and state actors breached their duty owed to the plaintiff.

168.    As a result of the government defendants' and state actors' conduct in violating Ms. Farr's right to due process and equal protection, plaintiff has suffered harm and damages in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 4.    Violations of FISA and the Patriot Act

169.   Plaintiff incorporates by reference paragraphs 1 through 168 of this (2nd) Amended Complaint.

170.   The conduct of the government defendants and state actors (Curry/Hesse/KLS and others) to act in privity and willfully participate in the "schemed plan" to conduct unwarranted and illegal domestic, physical and electronic surveillance and harassment of plaintiff and her loved ones under a false National Security Letter constitutes a violation of the Foreign Intelligence Surveillance Act of 1978 and Patriot Act.

171.   Under the FBI National Security Watchlist, the conduct of the government defendants and state actors was to willfully participate in the "schemed plan" to intentionally conduct illegal electronic and electromagnetic surveillance of plaintiff and her loved ones without good cause and without a warrant (i.e., telephone and computer monitoring), engage in the covert operation to break up her relationship, block campaign emails and donations, file IRS liens against her properties bring false charges against her for contempt, send sheriffs to harass her, maliciously prosecute her to try and prevent her from holding public office and rig her election in retaliation for her comments to Senator Inhofe to try and get them to cease.

172.   The government defendants' and state actors' conduct was an invasion of plaintiff's privacy and attempt to cause intentional emotional distress and bodily harm in violation of FISA and the Patriot Act.

173.   The government defendants and state actors owed plaintiff a duty not to conduct unwarranted surveillance of her and her loved ones to invade her privacy or to cause her mental anguish and bodily harm.

174.   The government defendants and state actors breached their duty owed the plaintiff.

175.   As a result of the government defendants' and state actors' unwarranted surveillance and invasion of privacy, plaintiff suffered harm in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 5.   Civil Conspiracy and/or Collusion

176.   Plaintiffs incorporate by reference paragraphs 1 through 175 of this (2nd) Amended Complaint.

177.   The conduct of the government defendants and state actors (Curry/Hesse/KLS and others) to act in privity and to willfully participate in the "schemed plan" to conduct intentional electronic / electromagnetic surveillance of plaintiff and her loved ones without good cause and without a warrant included telephone and computer monitoring, covert CIA operations to target her loved ones with DEW and break up her relationship, block campaign emails and donations, file IRS liens against her properties, bring false charges against her for stalking and contempt, send sheriffs to harass her, conspire with others to maliciously prosecute her and rig her election to prevent her from holding public office in retaliation for her social media comments to Senator Inhofe constitutes civil conspiracy and/or collusion.

178.   By participating in the "schemed plan" to target plaintiff in the above manner, the government defendants acted in privity with the intent of engaging in illegal and unethical activities to cause Ms. Farr intentional emotional distress/bodily harm and to deprive her of her property, having full knowledge that such acts were substantially certain to result in injury and detriment to plaintiff and her loved ones.

179.   State actor Christine Curry as a contractor working for the CIA, her attorney Rebecca Hesse, KLS and U.S. Attorney Christopher Allman acted in privity under Senator Inhofe at the direction of Luke Holland and government defendants as part of the "schemed plan" to break up her relationship and bring false charges against her to deny her rights and cause her intentional emotional distress, anxiety and depression pursuant to 42 USC 1983, 18 USC 242, 18 USC 2441 and 42 USC 1985 **(1),** (2) & (3).

180.   The conduct of the government defendants and these state actors was willful and with malice to cause bodily harm to plaintiff and her loved ones, destroy her relationship, sabotage her campaign, harass and maliciously prosecute her with the threat of incarceration and/or commitment to a mental institution, and then rig her election so that she would lose to prevent her from her right to hold public office as a United States Senator constitutes civil conspiracy and/or collusion and <u>exceeded the scope of their authority</u>.

181.   The conduct of the above as set forth herein constitutes civil conspiracy/collusion.

182.   As a result of the government defendants' and state actors' civil conspiracy and/or collusion, plaintiff has been damaged in excess of $75,000.00.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants

awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

## 6.   Fraud & Intentional Fraud

183.   Plaintiff incorporates by reference paragraphs 1 through 182 of this (2nd) Second Amended Complaint, in which fraud is stated with particularity.

184.   The conduct of the government defendants and state actors (Curry/ Hesse/KLS and others) to act in privity and willfully participate in the "schemed plan" using threats, intimidation and retaliation to conduct illegal surveillance of plaintiff, target her and harm her loved ones with DEW, break up her relationship, block campaign emails and donations to cause voters to think she was a loser, file IRS liens against her properties, maliciously prosecute her with false stalking and contempt charges to incarcerate and/or commit her, send sheriffs to her home to harass her knowing that she was innocent of any wrongdoing, file false stalking and contempt charges knowing that court documents are exempt from a stalking charge pursuant to K.S.A. 60-31a06(g) [fraud on the court], and use an algorithm to rig the election to prevent her from holding office as a United States Senator constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiff to act to her detriment.

185.   The overt acts of fraud engaged in by the defendants are stated above and these include, but are not limited to: authorizing the illegal surveillance of plaintiff and her loved ones under a falsely issued National Security Letter, telephone calls, meetings, verbal and written communications, harm her loved ones with DEW, break up her relationship using a CIA "poser," block campaign emails and donations, file false IRS liens against her properties, persuade Sedgwick County Court judges to falsify court orders, direct Curry, Hesse and KLS to file false stalking and contempt charges in violation of K.S.A. 60-31a06(g) to try and put her in jail or commit her which is fraud on the court, and using an algorithm to rig her election so she would lose in violation of 42 USC 1985 (1), (2) & (3) and HAVA Title III.

186.   At all relevant times, the above government defendants' and state actors' participation in the

27

plan to target plaintiff and cause her and her loved ones severe emotional distress and bodily harm was willful and wanton, and with full knowledge that such conduct was substantially certain to result in bodily injury and/or death and detriment to the plaintiff, and that it exceeded the scope of their employment.

187.   The government defendants' conduct constitutes fraud and intentional fraud.

188.   As a result of the government defendants and state actors' fraud and intentional fraud, plaintiff has been damaged in excess of $75,000.000.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 7.   Malicious Prosecution

189.   Plaintiff incorporates by reference paragraphs 1 through 188 of this (2nd) Amended Complaint.

190.   The conduct of the government defendants to act in privity and willfully participate in the "schemed plan," particularly Senator James Inhofe, Senator Jerry Moran, Luke Holland, the CIA and U.S. Attorney Allman, to retaliate further against plaintiff by conspiring with CIA contractor Christine Curry, her Attorney Rebecca Hesse and Kansas Legal Services, Inc., to file false stalking and contempt charges against her to try and put her in jail or have her committed to prevent her from becoming a United States Senator and member of Congress in 2022 constitutes malicious prosecution and a violation of her civil rights, including but not limited to: K.S.A. 60-31a06(g), 42 USC 1983, 18 USC 242, 18 USC 2441, 42 USC 1985(1)(2) & (3).

191.   The conduct of the government defendants to conspire with Curry, Hesse and KLS as state actors to "go along with the game," persuade Segwick County judges to sign off on the stalking order without evidence, grant it, deny plaintiff's stalking order without reasonable grounds, send sheriffs to harass her, and then continue the contempt charges with the improper purpose of putting her in jail or having her committed to prevent her from winning the United States Senate in 2022 constitutes malicious prosecution.

192.   At all relevant times, the government defendants' and state actors' participation in the

28

"schemed plan" to target plaintiff with false charges, send sheriff's officers to harass her, and proceed with hearings while knowing that mailing court documents is exempt from stalking charges (fraud on the court) to cause her severe emotional distress and bodily harm was willful and wanton, and with full knowledge that such conduct was substantially certain to result in injury and/or death and detriment to the plaintiff.

193.   Since sending court documents is exempt from stalking charges under K.S.A. 60-31a06(g) which the government defendants were well aware of prior to bringing false contempt charges against plaintiff, these were dismissed by the lower court which is evidence of fraud on the court and therefore, the government defendants' and state actors' conduct constitutes malicious prosecution.

194.   As a result of the government defendants and state actor's malicious prosecution which exceeded the scope of their employment/function, plaintiff has been damaged in excess $75,000.000.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

### 8. Outrageous Government Conduct Causing Intentional Infliction of Emotional Distress/Tort of Outrage

195.   Plaintiff incorporates by reference paragraphs 1 through 194 of this (2nd) Amended Complaint.

196.   The conduct of the government defendants, particularly Senator Inhofe, and state actors (Curry/Hesse/KLS and others) to act in privity and willfully participate in the "schemed plan" to threaten, intimidate and retaliate against plaintiff and her loved ones just because she ran against him for office was extreme and outrageous. Their conduct to engage in willful electronic/electromagnetic surveillance of plaintiff to violate her rights without good cause or a warrant included telephone and computer monitoring, covert operations to target her loved ones with DEW and break up her relationship, block campaign emails and donations to sabotage her campaign, file false IRS liens against her properties, engage in malicious prosecution and fraud on the court to bring false stalking and contempt charges to keep her from holding

office as a member of Congress, sending sheriffs to harass her and rigging her election using an algorithm constitutes civil conspiracy/collusion and intentional infliction of emotional distress/tort of outrage.

197.    The government defendants' and state actor's conduct to illegally target plaintiff and her loved ones in the above manner to cause her intentional emotional distress and bodily harm without good cause was extreme and outrageous and exceeded the scope of their employment as government officials.

198.    By participating in the government defendants' "schemed plan" to target plaintiff and her loved ones, sabotage her campaign by blocking emails and donations, break up her relationship, file false IRS liens against her home, engage in malicious prosecution by bringing false stalking and contempt charges against her, harass her by sending sheriffs' officers to her door, then rig her election to prevent her from holding public office to cause her severe emotional distress, mental anguish and bodily harm, the government defendants breached their duty owed the plaintiff. deprived plaintiff of her Constitutional rights under color of law 42 USC 1983, 18 USC 242, 18 USC 2441, and 42 USC (1), (2) & (3). Their conduct was grossly disproportionate under such circumstances, and amounted to an abuse of power that shocks the conscience.

199.    At all relevant times, their participation in the "schemed plan" to cause plaintiff severe emotional distress and bodily harm was intentional, willful and malicious, and with full knowledge that their conduct was substantially certain to result in severe emotional distress and bodily harm to plaintiff.

200.    The conduct of the government defendants and others to participate in targeting plaintiff and her loved ones to harass her and engage in malicious prosecution toward her while knowing that she was innocent was in bad faith and violated the duties of good faith and fair dealing toward the plaintiff.

201.    Due to the government defendants' acts and state actors' acts and failures to act, plaintiff suffered severe emotional distress and bodily harm as a result of their participation in the "schemed plan" to cause her extreme pain and suffering which include, but are not limited to: severe depression over losing the love and affection of her soul mate, increased anxiety, depression, inability to work, insomnia, nightmares, a ruptured disc in her neck and exacerbation of her skin cancer resulting in carcinomas to her leg.

202.    The conduct of the government defendants and state actors was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly

30

intolerable in a civilized society. Reciting the facts in this matter to an average person causes resentment toward all defendants, and leads them to exclaim: "Outrageous!"

203.   The outrageous conduct of the government defendants and state actors constitutes intentional infliction of emotional distress / bodily harm and liability to plaintiff for her injuries.

204.   Due to the emotional distress resulting from the illegal acts and failures to act directed at plaintiff by the government defendants, plaintiff suffered severe emotional distress and bodily harm.

205.   As a result of the outrageous conduct by all of the government defendants and state actors, plaintiff has been damaged in excess of $250,000.000.

WHEREFORE, plaintiff respectfully requests judgments of the court against all of the defendants awarding to plaintiff (i) damages in excess of $250,000.00 for each defendant; (ii) pre- and post-judgment interest; (iv) costs, including reasonable attorney fees for this action; (v) injunctive relief enjoining the above named defendants from continuing plaintiff's right to equal protection; and (vi) any other relief deemed just and equitable by the court.

Respectfully submitted,

By: _Joan E Farr_____
     Joan E. Farr, plaintiff *pro se*
     7145 Blueberry Lane
     Derby, Kansas 67037
     Phone: 918.698.3289
     Email: JoanFarr73@aol.com

## DESIGNATION OF TRIAL

Plaintiff designates Kansas City, Kansas as the location for the trial in this matter.

Respectfully submitted,

By: _Joan E Farr_____
     Joan E. Farr, plaintiff *pro se*
     7145 Blueberry Lane
     Derby, Kansas 67037
     Phone: 918.698.3289
     Email: JoanFarr73@aol.com

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

Respectfully submitted,

By: _Joan E. Farr_

Joan E. Farr, individually, *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
JoanFarr73@aol.com

**NOTE**:  Plaintiff would have amended to separate her claims of fraud/intentional fraud/fraud on the court to three separate counts; however, she would have exceeded 30 pages and her claims are voluminous as it is. So she decided to just revise to "fraud & intentional fraud" since this is most apparent to any reasonable person.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January 2023, a copy of the above and foregoing Second Amended Complaint was filed with the United States District Court for the District of Kansas, and pursuant to D. Kan. Rule 5.4.9(a), notice of electronic filing is automatically generated by the court's Electronic Filing System (CM/ECF) to send notifications of such filing to the email addresses on the electronic mail notice list.

By: _Joan E. Farr_

Joan E. Farr, plaintiff *pro se*
7145 Blueberry Lane
Derby, Kansas 67037
Phone: 918.698.3289
Email: JoanFarr73@aol.com