IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOAN E. FARR,

                Plaintiff,

vs.                               Case No. 22-2476-DDC-GEB

UNITED STATES GOVERNMENT, et al.,

                Defendants.

### Federal Defendants' Reply in Support of Their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

Farr's response to the Federal Defendants is replete with factual and legal[1] inaccuracies and in no way demonstrates the validity of her claims in the third remarkably flawed case arising out of the same set of operative facts. As demonstrated in this reply, Farr relies on cases that are no longer the law and have been expressly abrogated by subsequent Supreme Court precedent. And rather than acknowledge the validity of many of the Federal Defendants' arguments, Farr fails to respond in any manner, waiving the opportunity to demonstrate any flaw in the Federal Defendants' analysis. In this reply, the Federal Defendants address Farr's response to demonstrate that every claim she asserts is implausible, is barred by sovereign immunity, is legally or factually infirm, and that her response is yet another basis for imposing filing restrictions against Farr.[2]

---

[1] The opening paragraph of Farr's response suggests that the Federal Defendants' dispositive motion, which includes a motion for summary judgment, violates the purported "30 page" limit for briefs. Under D. Kan. Rule 7.1 the page limit for a motion for summary judgment is 40 pages, not 30.

[2] The Federal Defendants do not separately reply to Farr's Response to Federal Defendants' Notice to Pro Se Litigant Who Oppose a Motion for Summary Judgment (Doc. 84), but to the extent Farr advances arguments against dismissal or summary judgment in

1.  **Contrary to Farr's assertion, this Court must determine whether it has subject matter jurisdiction over Farr's claims before it evaluates the merits of her claims.**

The cornerstone of the Federal Defendants' dispositive motion is the argument that this Court lacks subject matter jurisdiction over Farr's implausible claims. In her response, Farr contends that "[w]ith regard to subject matter jurisdiction, the challenge for jurisdiction requires resolution of merits issues." Doc. 85 at 4. For that proposition, Farr cites *Clow v. U.S. Department of Housing and Urban Development*, 948 F.2d 614, 616, n. 2 (C.A.9 1991) and *Browning–Ferris Industries v. Muszynski*, 899 F.2d 151, 154–159 (C.A.2 1990). Based upon those cases, Farr suggests that "[e]ven if the Court does not agree, when thorny jurisdictional questions are presented, but the merits can be easily resolved against the party asserting jurisdiction, some courts have assumed the existence of jurisdiction and decided the merits." But the Supreme Court of the United States expressly abrogated the rulings in those two cases and others entertaining "hypothetical jurisdiction"[3] in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998):

---

that response, the Federal Defendants incorporate by reference their reply to those same argument.

[3] "While some of the above cases must be acknowledged to have diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question, none of them even approaches approval of a doctrine of "hypothetical jurisdiction" that enables a court to resolve contested questions of law when its jurisdiction is in doubt. Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning. *Muskrat v. United States*, 219 U.S. 346, 362, 31 S. Ct. 250, 256, 55 L. Ed. 246 (1911); *Hayburn's Case*, 2 Dall. 409 (1792). Much more than legal niceties are at stake here. The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects."

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

> This Court's insistence that proper jurisdiction appear begins at least as early as 1804, when we set aside a judgment for the defendant at the instance of the losing plaintiff *who had himself* failed to allege the basis for federal jurisdiction. *Capron v. Van Noorden,* 2 Cranch 126, 2 L.Ed. 229 (1804). Just last Term, we restated this principle in the clearest fashion, unanimously setting aside the Ninth Circuit's merits decision in a case that had lost the elements of a justiciable controversy:
>
> > "'[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it. *Mitchell v. Maurer,* 293 U.S. 237, 244 [55 S. Ct. 162, 165, 79 L. Ed. 338] (1934). *See Juidice v. Vail,* 430 U.S. 327, 331–332 [97 S. Ct. 1211, 1215–1216, 51 L. Ed. 2d 376] (1977) (standing). 'And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.' *United States v. Corrick,* 298 U.S. 435, 440 [56 S. Ct. 829, 831, 80 L. Ed. 1263] (1936) (footnotes omitted).'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 73, 117 S. Ct. 1055, 1071-1072, 137 L. Ed. 2d 170 (1997), *quoting from Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501 (1986) (brackets in original).

*Id.* at 95; *see Gragg v. Maximus, KC*, No. 22-2292-JWB, 2022 WL 17290927, at *2 (D. Kan. Nov. 29, 2022) ("When the court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6)." (*citing Bell v. Hood*, 327 U.S. 678, 682 (1946)). As the party seeking to invoke the jurisdiction of a federal court, Farr must prove that the case is within this court's subject matter jurisdiction. *See Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994). Because Farr fails to squarely address the Federal Defendants' jurisdictional arguments, she does not carry her burden and this case should be dismissed for lack of subject matter jurisdiction.

    **2. This Court lacks subject matter jurisdiction over Farr's implausible claims.**

3

Federal courts have subject-matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But Farr's Amended Complaint does not allege a colorable federal claim; instead, Farr's claims are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," *Steel Co.*, 523 U.S. at 89 (*quoting Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)), that the claims against the Federal Defendants should be dismissed for lack of subject matter jurisdiction.

### 3. Farr's claims against the Federal Defendants are also barred by *res judicata* and collateral estoppel principles.

In response to the Federal Defendants' arguments that her claims against them are barred by *res judicata* and collateral estoppel principles, Farr essentially advances two arguments. First, Farr suggests that this case is factually distinguishable from *Farr I* and *Farr II*. Second, Farr indicates she intends to appeal this Court's adverse ruling in *Farr II*, suggesting that the decision is therefore not final and does not bar this third, substantially similar, case.

**General Principles**

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 892. (editing and quotation marks omitted).

> [C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. ... Suits involve the same claim (or "cause of action") when they arise from the same transaction . . . .

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1594–95 (2020) (quotation and editing marks omitted).

**Analysis**

In regard to Farr's first argument, although the Amended Complaint adds defendants and the claims in *Farr III* that are articulated differently than her claims in *Farr I* and *Farr II*, the core of her case remains the same: a grand conspiracy against Farr by the United States that included the CIA planting a poser to break up Farr's relationship with her former boyfriend. Judge Broomes specifically found that Christine Curry, the alleged poser, was not an employee of the CIA and Farr did not challenge that decision by filing an appeal. In *Farr II*, this Court specifically found that collateral estoppel principles precluded Farr from asserting those same claims in that case and therefore she is precluded from asserting those same claims in this case. In addition to those specific factual findings, the prior findings of implausibility of her claims precludes a third case that asserts the same fantastic and bizarre claims.

In regard to Farr's second argument, even if she files a notice of appeal in *Farr II*, she cannot possibly escape the preclusive effect of Judge Broomes' rulings in *Farr I*. And in regard to the possibility of filing a notice of appeal in *Farr,* "[i]t appears the Tenth Circuit has not yet addressed [the finality of the judgment during the pendency of an appeal] for the federal common law." *Bird v. Wyoming*, No. 22-CV-152-NDF, 2022 WL 11837703,

5

at *4 (D. Wyo. Oct. 20, 2022), *motion for relief from judgment denied*, No. 22-CV-152-NDF, 2022 WL 17550097 (D. Wyo. Dec. 8, 2022).

> In *Ruyle v. Continental Oil Co.*, 44 F.3d 837, 845–46 (10th Cir. 1994), the Tenth Circuit held that a pending appeal did not affect the finality of an Oklahoma Corporations Commission decision for purposes of preclusion. But the court did so based on an Oklahoma statute. *Id.* The *Restatement (Second) of Judgments* § 13 notes "[t]here have been differences of opinion" on this issue, the "better view" is that a pending appeal or motion for relief from judgment does not affect finality for purposes of preclusive effect. *Restatement (2d) of Judgments* § 13 cmt. f But the same comment also states it may be appropriate to postpone deciding the issue until after the appeal or motion for relief is concluded. Another leading treatise is similar. Wright & Miller, *18A Fed. Prac. & Proc. Juris.* § 4433 (3d ed.) (in federal preclusion law, it is an established rule that "a final judgment retains all of its res judicata consequences pending decision of the appeal," but also suggests that federal courts should postpone deciding preclusive effect until a pending appeal is decided).

*Id*. In *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997), applying Kansas state law, the Tenth Circuit stated that "the Kansas courts have adopted the now-majority view regarding the pendency of appeals which provides that the fact that an appeal is pending in a case does not generally vitiate the res judicata effect of a judgment. *See Willard v. Ostrander*, 51 Kan. 481, 32 P. 1092, 1093–94 (1893); *Munn v. Gordon*, 87 Kan. 519, 125 P. 7, 8 (1912); *see also*, 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4433, at 308 (1981) (noting established rule in federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal)." So although the issue is not expressly decided in the Tenth Circuit, this reference to the "established rule in federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal" at least suggests that the Tenth Circuit would agree with the majority view in federal courts.

Farr contends that collateral estoppel does not apply because "[i]n this matter, the issues in all proceedings are not identical, *Farr I* and *Farr II* were both dismissed so there

6

was not a full and fair opportunity for litigation, and there was not a valid and final judgment on the merits." Doc. 85 at 8.  Although the exact claims may not be identical, they arise out of the same largely indistinguishable operative facts.  In regard to Farr's argument that "*Farr I* and *Farr II* were both dismissed so there was not a full and fair opportunity for litigation, and there was not a valid and final judgment on the merits," (Doc. 85 at 8) she is simply wrong.  Both cases were properly dismissed for a host of reasons and both resulted in a final judgment against Farr.

Finally, to the extent this Court denied Farr's motion to amend her complaint to add former Senator James Inhofe, his former Chief of Staff Luke Holland, the FBI, the CIA, the IRS, Assistant United States Attorney Christopher Allman, and the District Court of Sedgwick County, Kansas, that determination constitutes a final judgment and Farr's attempt to reassert those same claims in this case is barred by res judicata principles.  *Pro. Mgmt. Assocs., Inc. v. KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2003).

Because Farr cannot demonstrate the existence of subject matter jurisdiction over any of her implausible claims against the Federal Defendants, and because her claims are otherwise barred by *res judicata* or collateral estoppel principles, the Court need not rule on the additional arguments set forth in the balance of this reply.  Nevertheless, in light of the enormous amount of money Farr seeks in this case, the Federal Defendants briefly reply to the arguments raised in Farr's response.

> **1.    Farr's FTCA Claims Against All Federal Defendants Except the United States Must be Dismissed Because Only the United States is a Proper Defendant Under the FTCA.**

Farr presents no basis to sue any Federal Defendant under the FTCA *other than the United States*.  Farr's response suggests that because she alleges that all of the individual

7

federal employees committed tortious action outside the scope of their employment, that the FTCA is not a bar to her claims against them. But Farr alleges that all of the Federal Defendants, at the direction of the United States, have committed these torts against her, and therefore that would be within the scope of their employment. Farr cannot have it both ways. Furthermore, as this Court has already found, because plaintiff's fantastical allegations of *ultra vires* conduct are "entirely conclusory," "bizarre[,] and totally implausible," Plaintiff "has wholly failed to put forth sufficient credible allegations" to state a claim on the merits. *Farr v. United States Government*, 2022 WL 124032, at *2, *3 (D. Kan. Jan. 3, 2022). Farr's tort claims under the FTCA[4] against the named federal agencies, former Senator Inhofe, his former Chief of Staff Luke Holland, Senator Moran, and AUSA Christopher Allman must be dismissed for lack of subject matter jurisdiction or failure to state a claim.

### 2. Farr's Claims for Intentional Torts Are Barred by Sovereign Immunity Intentional Tort Exception—§ 2680(h).

Revisiting the same argument, Farr contends that the law enforcement exception in the FTCA for acts or omissions committed while the law enforcement officer is acting within the scope of his or her employment is applicable. But that exception does not apply in this case because none of the individual defendants is a law enforcement officer within the meaning of the FTCA:

> Known as the "law enforcement proviso," this provision extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, that are based on the "acts or omissions of investigative or law enforcement officers." § 2680(h). The proviso defines " 'investigative or law

---

[4] If Farr is not asserting tort claims against the individual defendants under the FTCA, her claims against Senator Moran and AUSA Allman, residents of Kansas, those claims should be dismissed for lack of diversity jurisdiction because Farr also resides in Kansas.

enforcement officer' " to mean "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Ibid*.

*Millbrook v. United States*, 569 U.S. 50, 52–53 (2013).  Consequently, the "intentional tort exception" bars all of Farr's claims for intentional torts including battery, false arrest, malicious prosecution, libel, slander, misrepresentation and deceit.

### 3. Farr's § 1983, § 1985 and Constitutional Tort Claims Are Barred by Sovereign Immunity.

Farr's response states "AUSA Christopher Allman does not have sovereign immunity under the Eleventh Amendment in this matter any more than the rest of the defendants do."  Doc. 85 at 9.  The Eleventh Amendment is in no way relevant to the Federal Defendants defense in this case and Farr's discussion of that Amendment and the "stripping doctrine" constitutes a complete waste of time.[5]  To the Federal Defendants' argument that § 1983 "applies to actions by state and local entities, not to the federal government," *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997), Farr apparently concedes that point as she quotes *United States v. Classic,* 313 U.S. 299, 326 (1941) for the proposition that "[t]he cause of action provided in 42 U.S.C. 1983 is fundamentally one for "mis(use) of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Doc. 85 at 9.  Whether Farr's § 1983 claims against the individual defendants are asserted against them in their official or individual capacity, they fail for that reason alone.

---

[5] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Nevertheless, Farr presses on with the suggestion that her § 1983 claims are valid and deserving of compensatory and punitive damages. Claims for punitive damages against the United States under the FTCA are barred by sovereign immunity. See 28 U.S.C. § 2674. Farr suggests that it would be in the best interest of our nation to consent to be sued in this case (Doc. 85 at 10), but Congress, not Farr or this Court, determines the limits of waiver of sovereign immunity under the FTCA.

Farr's response does not challenge the Federal Defendants' assertion that her claims under § 1985 are similarly barred by sovereign immunity and those claims should be dismissed. *See Fay v. United States*, 389 F. App'x 802, 803-04 (10th Cir. 2010) (stating that claims under § 1985 "are barred by sovereign immunity.") (citations omitted).

### 4.  Farr Cannot Assert Claims Against the Federal Defendants Based Upon Federal Criminal Statutes.

To the Federal Defendants' argument that neither 18 U.S.C. § 242, Deprivation of rights under color of law, nor 18 U.S.C. § 2441 waives sovereign immunity or provides for a private cause of action, Farr suggests that her claims should survive because her "claims in this matter are quasi-criminal." Doc. 85 at 10, 12. Adding the word "quasi" before the word "criminal" does not change the fact that Farr can point to no decision suggesting that a private party may assert claims against the United States or anyone else under those criminal statutes.

### 5.  *Bivens* Cannot Supply a Private Right of Action against the Senators, Luke Holland, or AUSA Christopher Allman.

Citing cases decided before the Supreme Court's recent decision *Egbert v. Boule*, 142 S. Ct. 1793 (2022) ("[W]e have emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity.'") (*quoting Ziglar v. Abbasi*, 137 S. Ct. 1843, at 1856-1857 (2017) (internal quotation marks omitted)); *see Silva v. United States*, 45 F.4th

10

1134, 1140 (10th Cir. 2022) ("We take several lessons from *Egbert*. First and foremost, we are left in no doubt that expanding *Bivens* is not just "a disfavored judicial activity," *id.* at 1803 (*quoting Abbasi*, 137 S. Ct. at 1857), it is an action that is impermissible in virtually all circumstances."), Farr suggests that the law under § 1983 applies to *Bivens* claims. That is no longer the law in the United States and Farr presents no argument that her claims fall within the narrow categories of *Bivens* cases recognized by the Supreme Court. Farr cannot sue the individual federal defendants under § 1983 or *Bivens* in this case.

      **6.    Farr's Claims Against Former Senator Inhofe, Luke Holland, Senator Moran, and AUSA Christopher Allman are Precluded by Qualified Immunity.**

In response to the argument that even if her Amended Complaint invokes a new type of *Bivens* claim and alleged an individual capacity claim against the Senators, Luke Holland, or AUSA Allman that Farr's constitutional and statutory claims against them are also precluded by qualified immunity for the Amended Complaint's failure to allege the violation of any constitutional or statutory right that is clearly established under law, Farr argues that her Amended Complaint alleges the violation of her constitutional rights. Farr's response fails to demonstrate that her fanciful claims are not barred by qualified immunity.

      **7.    The Speech or Debate Clause Preclude Claims Based on a Legislative Act.**

Although Farr argues that the Speech and Debate Clause does not preclude her claims against former Senator Inhofe, Senator Moran, and Luke Hollard because they were allegedly acting outside their legislative functions, she does not provide any support for that proposition. To the extent any of Farr's claims against Senator Inhofe, Senator Moran, and Luke Holland may be predicated on any legislative act, such as any alleged failure to investigate her allegations, such claims are barred by the Speech or Debate Clause, art. I,

11

§ 6, cl. 1, of the Constitution, which affords Members of Congress and their staff absolute immunity from all claims arising out of the legislative realm.

### 8. Farr Cannot Establish Personal Jurisdiction over former Senator Inhofe or Luke Holland.

Farr's response fails to demonstrate that this Court has personal jurisdiction over former Senator Inhofe, who was elected from the State of Oklahoma, and Luke Holland because she cannot demonstrate the requisite minimum contacts by either defendant with Kansas. That Farr moved her business to Oklahoma in 2013 and ran against Senator Inhofe in 2014 does not establish that either former Senator Inhofe or Luke Holland have any presence in Kansas that would establish personal jurisdiction over either defendant.

### 9. Farr's Malicious Prosecution Claims Fail On The Merits.

Citing a Sixth Circuit case from 1986,[6] Farr suggests that the *Rooker-Feldman* doctrine does not apply to bar her malicious prosecution claims in this case because she thinks that the state court anti-stalking orders were obtained by mistake or fraud. But the Tenth Circuit has discussed and essentially rejected the holding in *In re Sun Valley Foods Co.* in *West v. Evergreen Highlands Ass'n*, 213 F. App'x 670, 674 (10th Cir. 2007). In footnote 3, the Tenth Circuit explained:

> This circuit has not held that *Rooker–Feldman* may be circumvented by a collateral attack of the sort suggested in the cases discussed above. There is good reason to balk at such a step. State rules of procedure provide various means to attack a wrongfully obtained judgment. *See In re the Marriage of Gance,* 36 P.3d 114, 116–18 (Colo. App. 2001) (discussing motion for relief from judgment based on misconduct of party, equitable action for relief from judgment based on fraud, and claim of "fraud upon the court"). Construing *Rooker–Feldman* to permit federal reconsideration and nullification of state judgments on grounds that could have been pursued in

---

[6] *In re Sun Valley Foods Co.,* 801 F.2d 186, 189 (6th Cir. 1986).

> state court arguably allows under the rubric of collateral attack just another mechanism for lower federal court review unauthorized under § 1257. In any event, given the inadequacy of plaintiff's factual basis noted above, we need not resolve the larger legal point here.

*Id.* at 674, n. 3.

Farr, apparently citing *Guinn v. Apartment Owners Ass'n of Makaha Valley Towers Bd. of Directors*, No. CIV. 14-00474 HG-RLP, 2015 WL 855151, at *7 (D. Haw. Feb. 27, 2015), argues "[f]urthermore, since plaintiff's federal constitutional claims are "inextricably intertwined" with a state court's judgment, the *Rooker-Feldman* doctrine does not apply to bar [the] party's claim." Doc. 85 at 13. But the case cited by Farr actually stands for the exact opposite proposition:

> There are exceptions to the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine does not apply to a general constitutional challenge, meaning one that does not require review of a state court decision. *See Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986). That said, if the federal constitutional claim is "inextricably intertwined" with a state court's judgment, the *Rooker–Feldman* doctrine *does* apply to bar the party's claim. *See Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001) ("If the federal constitutional claims presented to the district court are "inextricably intertwined" with the state court's judgment, then Doe is essentially asking the district court to review the state court's decision, which the district court may not do.").

2015 WL 855151 at *7 (emphasis added). Farr's challenges to the state court orders are properly dismissed under the *Rooker-Feldman* doctrine.

**Statement of Facts**

Because Farr's implausible claims are barred by sovereign immunity, it was unnecessary to move for summary judgment on behalf of all Federal Defendants on all claims. In regard to the malicious prosecution claim against AUSA Allman, although those implausible claims are barred by sovereign immunity, because Farr's allegations that he represented or counseled Christine Curry to improperly obtain an anti-stalking order in

13

state court directly impugn his reputation with this Court, the Federal Defendants' dispositive motion directly responded to those specific claims factually.

Contrary to Farr's assertion, parties are competent to submit affidavits or declarations under penalty of perjury and routinely do so. *See James-Cornelius on Behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (*citing* Fed. R. Civ. P. 56(c)(4) which allows "parties to support or oppose a motion for summary judgment based on affidavits or declarations 'made on personal knowledge' that 'set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated'"). AUSA Allman has personal knowledge that in no way did he counsel or encourage Christine Curry to seek and obtain anti-stalking orders or seek an order to hold Farr in contempt for violating that order. That Farr disbelieves—even under penalty of perjury—the information in AUSA Allman's declaration is of no moment unless she can present actual, admissible evidence based upon personal knowledge to contradict those facts. This she does not do. Moreover, if Farr's interpretation of the law was correct, her case could never be proven because she is essentially the only person supporting almost everything she alleges and she bears the burden of proof on all of her claims. All of the Federal Defendants' statements of fact should be deemed admitted and summary judgment be granted to AUSA Allman on Farr's malicious prosecution claim because he did not participate in any way in the state court proceedings. And because the state case ended in favor of Curry—not Farr—she cannot establish that the proceeding terminated in her favor and therefore Farr fails on that essential element of her malicious prosecution claim—an argument Farr fails to meaningfully address.

### 10. Filing Restriction Against Farr Are Warranted.

In a consistent pattern across a long period of time, Farr has wasted substantial time and resources of this Court and the United States with meritless, frivolous litigation. In light of the dismissal of *Farr I* and *Farr II,* revisiting essentially the same implausible claims in the guise of a third case alone warrants filing restrictions against Farr. Farr's response to the Federal Defendants' dispositive motion is replete with misstatements of law and fact, further demonstrating the need to impose filing restrictions, and there is no reason to think that Farr will not engage in similar frivolous litigation in the future if restrictions are not imposed.

Respectfully submitted,

s/ Duston J. Slinkard
DUSTON J. SLINKARD
Ks. S.Ct. No. 21294
United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: Duston.Slinkard@usdoj.gov

Attorney for the Federal Defendants

CERTIFICATE OF SERVICE

I certify that on February 1, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system. A paper copy was mailed to:

Joan E. Farr
7145 Blueberry Lane
Derby, KS 67037
Plaintiff, pro se

s/ Duston J. Slinkard
DUSTON J. SLINKARD